ANDREWS, USE, &C. v. ROACH & COFFEY.

1. A contract to carry cotton from a landing on the Tennessee river to New-Orleans, at fifty cents per hundred pounds, although in writing, does not preclude the boat owner from showing the existence of a custom on that river, of charging lighterage, in addition to the freight, whenever the tide in the river is so low throughout the season, as to prevent cotton boats from passing the Muscle Shoals.

Writ of error to the Circuit Court of Jackson county.

ASSUMPSIT to recover a sum of money due from the defendants to the plaintiffs, for the freight and lighterage of a quantity of cotton shipped by a flat-bottomed boat, from Cross's Landing, on the Tennessee river, to New-Orleans. The declaration contained a special count on the contract, and two of a general character. The defendants pleaded *non assumpsit* and set-off.

At the trial, a bill of lading was shewn in evidence to the jury. This recites the shipping of the cotton by the defendants, to be delivered, &c. at New-Orleans, the dangers of the rivers only excepted, to the defendants or their assigns, they paying freight therefor at the rate of fifty cents per hundred pounds, payable at the residence of the defendant, Roach, in Alabama bank notes. The plaintiff farther proved the delivery of the cotton in New-Orleans, with the exception of three of the bales, two of which were damaged, and the third entirely lost.

The plaintiff also offered to prove that, during the season in which the cotton was shipped, there was no tide in the Tennessee river sufficient to carry cotton boats over the Muscle Shoals, on said river, and that in consequence thereof, the plaintiff was compelled to lighten the cotton over said shoals. This lightering consisted in taking the cotton out of large boats, and placing it in smaller ones, thus carrying it over the shoals in them, and when over, in replacing it in the larger boats. That this lightering cost the plaintiff one dollar and a half per bale; and that for the last fifteen years it has been the universal custom in said business on the said river, for the freighter to charge for lighterage, and for the consignor to pay it; and that this

custom prevailed in all cases where bills of lading were given, and nothing was said therein as to the lighterage. This evidence was excluded by the Court, to which the plaintiff excepted.

A verdict was found in his favor for a small sum, on which judgment was rendered. He now prosecutes his writ of error, and assigns that the Court erred in excluding this evidence.

ROBINSON, for the plaintiffs, cited Bank of Columbus v. Fitzhugh, 1 Har. & G. 239 ; Collins v. Hope, 3 Wash. C. C. 150; Lewis v. Thatcher, 15 Mass. 433; Simpson v. Gazzam, 6 Porter, 123 ; Catlin v. Powell, 6 Term R. 320 ; 3 Conn. R. 9 ; 11 Mass. R. 85.; 3 Greenl. 277 ; 3 Day's, 346; Yeatman v. Bank of Alexandria, 5 Cranch, 49 ; Noble v. Kennoway, Doug. 492; Bank of Utica v. Smith, 18 John. R. 230; 1 Camp. 503, 508 ; 6 H. & J. 408.

HOPKINS, contra, cited Melter v. National Ins. Co. 1 Hall, S. C. R. 452.

GOLDTHWAITE, J.—This case is not without difficulty, and the question which it presents, is one upon which there is some conflict of authority. It is without doubt, the general rule, that when parties have entered into a written contract, its terms cannot be controlled, varied or contradicted by parol evidence; yet there are many and unquestionable exceptions to this rule. The most familiar class is negotiable securities, which are almost always construed with reference to the customs prevailing in particular places. Most of the American cases on this subject, have been collated in the notes to Phillips's Evidence, by Cowen & Hill, 3 vol. 1411, but when they are all examined, it must be conceded that the multiplicity of decision, renders it exceedingly difficult to ascertain any fixed and specific rules by which the admission of such evidence is to be controlled.

In the case of the schooner Reeside, 2 Sumner, 567, the attempt was made to show the existance of a custom, that packet vessels engaged in trade between New-York and Boston, were not liable to pay for any damage, except what should be occasioned by neglect. Judge Story sustained an exception to the proof of such a custom, as directly at variance with the

contract evidenced by the bill of lading. After admitting that he is unfriendly to the almost indiscriminate habit, of late years, of setting up particular usages or customs in almost all kinds of business and trade, to control, vary or annul the general liabilities of parties under the common law, he says, the true and appropriate office of a usage or custom is, to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications and presumptions, and acts of a doubtful or equivocal character. It may also be admitted to ascertain the true meaning of a particular word, or of particular words, in a given instrument, when the word or words have various senses, some common, some qualified, and some technical, according to the subject matter to which they are applied. But he denies that it can ever be proper to resort to any usage or custom to control or vary the positive stipulations in a written contract, and *a fortiori*, never in order to contradict them.

However true this may be in the main, it is certain, that with us, as well as in England, the doctrine of annexing customary incidents to contracts of particular descriptions, has long prevailed, and has been applied, not only to them, but to many other transactions of life in which known usages have been established. And it has been said these cases go upon the presumption that the parties do not mean to express in writing the whole of the contract by which they intended to be bound, but to make a contract with reference to those known usages. Parke Baron in Hatter v. Warren, 1 M. & W. 486.

In the present case, the effect of the custom offered in evidence, was not to contradict, vary or control that evidenced by the bill of lading, but rather to show that on the occurrence of an event contemplated by neither party, when the contract was made, that certain incidents attached to it from a particular usage. The dangers of the river were excepted against, and if the low stage of the water prevented the passage of the particular class of boats employed, through the shoals, the consequence to the shipper would most usually be disastrous, and yet, if this matter was of unfrequent occurrence, it would probably never form the subject of an express stipulation.

It would be unreasonable to conclude in such a course of bu-

siness, that the owner of the boat should perform that which his contract did not require him to do; and if such a custom exists as was offered in evidence, it most probably has grown up from the obvious benefit that it is to the shipper to get his cotton to market before the close of the season.

It may be remarked as applicable, and perhaps peculiar to this contract, that the boat owner, by its terms, would have been justified, in the absence of such a custom, as was offered to be proved, in not attemping to pass the shoals until enabled to do so with safety by a rise of water, and that in such a case, the injury would be great to the shipper; it is not unreasonable then to infer that this was not contemplated by the parties when the contract was made, and if not, certainly it cannot be said the usage controls or contradicts that which the parties have agreed upon. The contract contemplates ordinary dilligence to make the voyage; the usage applies only when circumstances call for extraordinary exertions not required by the contract.

We cannot doubt that such a usage, if made out by competent evidence, is proper, and that it only annexes an incident to the contract, equally beneficial to the shipper, and obligatory upon him.

The judgment must be reversed, and the cause remanded.