## COX, BRAINARD & CO. *vs.* PETERSON.

[ACTION AGAINST COMMON CARRIER FOR FAILURE TO DELIVER GOODS.]

1. *Admissibility of parol evidence to affect written.*—A bill of lading cannot be contradicted or varied by parol evidence.
2. *Liability of common carrier.*—Under a written contract, by which the owners of a steamboat bound themselves, as common carriers, to deliver certain goods at a specified point, the loss of the goods by fire, after having been deposited in a warehouse at the highest point to which, on account of the low stage of the water, the boat could ascend the river, does not excuse the defendants' failure to deliver the goods at the specified place.
3. *Admissibility of custom.*—In an action against the owners of a steamboat, as common carriers, for failing to deliver goods at the place specified in their bill of lading, evidence of a custom among the steamboat-men to ascend the river as high as the stage of water in it permitted, and then to land their cargo and deposit the goods in warehouses, is not admissible for the defendants.
4. *Acceptance of part no discharge of liability for residue of goods.*—The acceptance of a portion of the goods by the consignee, at a place different from that specified in the contract, though admissible in mitigation of damages, does not discharge the common carrier from liability for the residue.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. THOMAS A. WALKER.

THIS action was brought by M. W. Peterson against Cox, Brainard & Co., to recover damages for the defendants' failure to deliver at Columbus, Mississippi, certain

Cox, Brainard & Co. v. Peterson.

goods which were shipped at Mobile, by Calvert & Co., on board the steamboat *Eliza Battle*, of which the defendants were the owners, to be delivered to the plaintiff at Columbus; and which were carried up the river as far as Newport, 35 or 40 miles below Columbus, the highest point to which the low stage of the water permitted the boat to ascend the river, where they were deposited in a warehouse, and there a portion of them was destroyed by fire. The defendants pleaded the general issue.

On the trial, as appears from the bill of exceptions, the plaintiff offered in evidence, after proving its execution, the bill of lading for the goods, which stipulated that the goods should be delivered to the plaintiff at Columbus, "dangers of the river excepted"; and proved the loss of the goods as above stated. The defendants offered in evidence an advertisement inserted by them in the newspapers, relative to the voyage of the said steamer to Columbus, in which it was stated that they would give "clear bills to Gainesville." They also offered to prove, "that the shippers knew that said boat, though advertised to go to Columbus, would give clear bills of lading only to Gainesville, which is below Newport, and that she was to carry the goods to Columbus only in case the water permitted; that they knew of this advertisement, and that the true contract between them was to that effect; and that the bill of lading was drawn without restriction by mistake." The court excluded this evidence, on plaintiff's objection, on the ground that the bill of lading could not be contradicted by parol proof; to which defendants excepted.

"The defendants then offered to prove that another bill of lading for said goods was made out by the clerk of the boat, was forwarded to plaintiff by the boat, with the goods, and by him received; which bill of lading contained the restriction of 'water permitting' as to any point beyond Gainesville; and that the clerk was instructed not to give clear bills on that voyage to Columbus. It was not stated whether this bill of lading was filled up before or after the boat left the wharf. This evidence was offered in connection with the previous evidence,

and separately: and was rejected by the court, on the ground that the bill of lading could not be contradicted by such evidence"; to which defendants excepted.

The defendants offered in evidence, also, the depositions of Geo. W. Cloudis, Richard A. Jackson, and Gideon B. Massey, each of whom testified to the existence of a custom among the steamboat-men on the Tombeckbe river, in the event of the water in the river falling before their boat reached its destination, to land their cargoes at the highest point which they could safely reach, and there store the goods in warehouses. The court excluded this evidence, on plaintiff's objection, and the defendants excepted.

It was proved, that the plaintiff, after the goods had been stored in the warehouse at Newport, hauled away a portion of them, paying the freight and storage.

Upon this evidence, the court instructed the jury,—

"1. That by the obligation of the bill of lading, the defendants were bound to carry the goods safely, and to deliver them at Columbus; that although the goods were landed and stored in the warehouse, because the water was too low to allow the boat to go to Columbus, still they were in the warehouse at the defendants' risk, whose obligation was in the nature of an insurance until the goods reached their destination; that accidental fire, not being the act of God, was not a danger of navigation, such as would excuse the defendants; and that such loss by fire, while the goods were in the warehouse, if there deposited by the defendants, was at their risk.

"The defendants excepted to this charge, and requested the court to instruct the jury, that if the plaintiff received and hauled away part of his goods from the warehouse, paying the freight for those taken; and that this was done with the intention of taking away the remainder so soon as his wagon could return,—then such acceptance, with such intention, determined the contract of the carriers, and discharged them from further liability. The court refused this charge, and instructed the jury, that the acceptance of part of the goods excused the carriers only as to that part; unless the plaintiff actually received all

the goods, and left part with the warehouse-man, on his own account, until he could haul them away; and the defendants excepted, both to the charge given, and to the refusal to charge as requested."

The rulings of the court on the trial, both in the rejection of evidence offered by the defendants, and in the instructions to the jury, are now assigned as error.

GEO. N. STEWART, for the appellants.

WM. G. JONES, *contra.*

RICE, C. J.—The defendants are common carriers. The bill of lading, delivered by them to the consignor, the agent of the plaintiff, contains their contract with the plaintiff. They cannot be permitted to add other terms to that written contract, or to contradict or vary it, either by a writing in the form of a bill of lading *subsequently* sent by them to the plaintiff, or by parol evidence.—West v. Kelly, 19 Ala. 353; Cole v. Spann, 13 Ala. 537, and authorities cited for appellee.

The main question is not one of actual blame, but of legal obligation. The contract of the defendants, as common carriers, was to transport and deliver *at Columbus* the goods of the plaintiff received by them, "dangers of the river excepted." By it, they became absolutely liable for the safety of the goods, until delivered at the place therein specified, and responsible for losses resulting before delivery at that place, from fire, or from any and every other cause whatever, except "dangers of the river," or the act of God, or the public enemies, or the fault of the plaintiff. Coggs v. Barnard, and the notes thereto, 1 Smith's Leading Cases, (edition of 1855,) top pages, 283, 315; Friend v. Wood, 6 Grattan's R. 189; McClenaghan v. Brock, 5 Rich. Law Rep. 17; N. J. Steam Nav. Co. v. Merchants' Bank, 6 How. (U. S.) Rep. 344; Patton's Adm'rs v. Magrath & Brooks, Dudley's Rep. 159; Harrell v. Owens, 1 Dev. & Batt. 273; Edwards on Bailments, 513. The only exception expressed in the contract is, "dangers of the river." The only exceptions implied by law are, the

act of God, or of the public enemies, or the fault of the plaintiff.

The excuse arising from the inability of the steamboat by reason of the low stage of the water, to ascend the river as far up as Columbus, is no defense for violating their engagement to deliver the goods at Columbus. Nor was the engagement to deliver them at Columbus performed, discharged, or terminated, by their placing them in the warehouse at Newport. Nor was their liability for the safety of the goods diminished by their placing them in that warehouse.—Edwards on Bailments, 514, and authorities *supra;* Davis v. Garrett, 6 Bing. 716.

If the goods had been safely delivered at Columbus, and this suit had been one for not carrying and delivering them there in a reasonable time, then the question might have been raised, whether a common carrier, in respect to *the time of delivery* of goods, may *excuse delay* in the delivery, by accident or misfortune, although not inevitable, where he has used due care and diligence to guard against delay. That question seems to have been considered and decided in the affirmative in Parsons v. Hardy, 14 Wend. 215; and in Boner & Crist v. Merchants' Steamboat Co., 1 Jones' No. Ca. Rep. 211. But there is no such question in this case. The question here is as to the liability for not delivering the goods at all—for their loss,—not for *mere delay* in delivering; and even if it were conceded that the placing the goods in the warehouse at Newport, under the circumstances proved, might be an excuse for *mere delay* in not delivering them, yet it cannot exempt the defendants, as common carriers, from their duty to keep them safely, or liability for their loss by fire in the warehouse. The usage, or custom, which the defendants offered to prove, does not touch the question of the liability of the defendants for the loss of the goods by fire in the warehouse at Newport, before they had been delivered at Columbus, but tends only to show an excuse for mere delay in not delivering. As there was no such question of *delay*, in this case, the evidence as to the usage was irrelevant and inadmissible. But, if the usage had tended to show that the defendants were exempt from lia-

bility, under their written contract, for the loss of the goods by fire before they were delivered at Columbus, then the evidence as to the usage would have been inadmissible, as its plain effect would have been to vary or contradict the written contract.—Barlow v. Lambert, 28 Ala. 704; Smith & Holt v. Mobile Nav. & Mut. Ins. Co., at last term.

In Lowe v. Moss, 12 Illinois Rep. 477, it was decided, that the receipt by the owner, of a part of a lot of goods *in transitu,* does not discharge a common carrier from liability as to the remainder. That decision meets our unqualified approval. The acceptance of part may be given in evidence in mitigation of damages. It has no greater effect.—Bowman v. Teal, 23 Wend. 306; Leavitt v. Smith, 7 Ala. 175. The *unexecuted intention* to accept the other part is not an acceptance of it. Waters v. Spencer, 22 Ala. 460.

There is no error; and the judgment of the court below is affirmed.