# BOON & Co. *vs.* STEAMBOAT BELFAST.

### [LIBEL IN ADMIRALTY AGAINST STEAMBOAT.]

1. *Liability of common carrier for loss by robbery; admissibility of custom.* The owners of a steamboat are liable, as common carriers, for a loss of goods by robbery; and where the only exception specified in the bill of lading is "dangers of the river", parol evidence cannot be received to show a custom among the persons who were engaged in navigating the river, which exempted the owners of the boat from liability for a loss caused by the forcible and illegal seizure of the boat by a body of armed men, without fault or neglect on the part of the officers or crew. (Overruling *Steele v. McTyer's Adm'r*, 31 Ala. 667.)

APPEAL from the City Court of Mobile.
Tried before the Hon. H. CHAMBERLAIN.

THE appellants in this case filed a libel in admiralty, on the 30th March, 1866, against the steamboat *Belfast*, claiming fifty-eight hundred dollars, the alleged value of twenty-nine bales of cotton, which, with other bales, were shipped on said boat at Columbus, Mississippi, to be transported to Mobile, and were never delivered to the consignees. B. C. Nelson and A. F. Hurtel intervened as owners of the boat, and filed an answer to the libel, alleging that the boat, while moving down the river, was forcibly boarded and seized by a body of armed men, without fault on the part of the officers or crew, and the cotton thereby lost; and that they were not liable for the loss under these circumstances, by virtue of a custom or usage among the persons who were engaged in navigating the river. The material portions of the answer are copied in the opinion of the court, and need not be here repeated. The libellants excepted to the allegations of the answer as to the custom, on the ground that such custom, if it existed, was illegal and void. The city court overruled the exception, and, on the trial, admitted parol proof of the custom, against the objections of the libellants; and these rulings of the court are now assigned as error.

Boon & Co. v. Steamboat Belfast.

DARGAN & TAYLOR, for appellants.—1. Nothing will excuse a common carrier from liability for the loss of goods, except the act of God or of the public enemy. This rule is founded in a wise public policy, and is strictly enforced against carriers.—2 Kent's Com. 597; Story on Bailments, 492, 495; 1 Parsons on Contracts, 635, 638–9; 5 Story's R.

2. The alleged custom, if its existence were proved, could not be allowed to change the express contract of the parties. Some of the cases, in upholding the validity of particular customs or usages, have already gone further than sound policy justified; and they ought not to be extended. A custom which would open a door for fraud and collusion, injuriously affect public morals, and be disastrous to commercial interests, cannot be sanctioned.—23 How. 49, 63; 2 Sumner, 567; 1 Sandf. S. C. R. 137: 2 Cr. & J. 243; 14 How. 445; 2 Kent, 556; 7 Yerger; 3 Phil. Ev. 1415; 19 Wendell, 251; 6 Pick 145.

W. BOYLES, *contra*, cited the following cases and authorities: *Sampson & Lindsay v. Gazzam*, 6 Porter, 123; *Steele v. McTyer's Adm'r*, 31 Ala. 667; *McClure v. Cox, Brainard & Co.*, 32 Ala. 617; *Renner v. Bank of Columbia*, 9 Wheat. 587; 40 Penn. St. 241; 43 Maine, 379; 1 Arnould on Insurance, 60, 66, 72, 74, 76: 4 Mees. & W. 211; 3 Day, 346; 4 M. & S. 150; 6 Har. & J. 408; *Fulton Insurance Co. v. Milner, Tinsley & Co.*, 23 Ala. 420; 7 Mass. 369; 2 Pick. 8; 7 Johns. 385; 7 Cowen, 202; 8 Wendell, 106; 4 Wendell, 33; 5 Barn. & Ald. 238; 7 Car. & P. 701; 4 N. & M. 602; 3 Barn. & Ald. 728.

JUDGE, J.—The respondents, in their answer to the libel, made the following averment in substance, as one of their grounds of defense: "That it is the universal practice and understanding, amongst all persons navigating the waters of the Tombigbee river, and of all persons shipping cotton to Mobile on said river, that where cotton is received on board of a steamboat, to be transported to Mobile, if the boat is captured by armed men, and the cotton thereby lost to the owner or owners, without any fault or neglect of the officers or crew of the boat, neither the boat nor the

12

owners of the boat are liable for said loss; that the said practice and understanding is general, and universally known to all persons navigating said river to Mobile ; that is, that said custom is general, universal, and uniform, and known to all persons navigating said river, and all persons shipping cotton upon said river ; that said custom existed at the time of the contract of shipment, and before that time, and was known to all persons who were engaged in shipping cotton on said river to Mobile, and to all persons navinating said river."

This allegation was excepted to by the libellants, as setting up a custom in direct conflict with the law, and as being no bar to the libel. The court overruled the exception, and, on the trial, permitted parol evidence to be introduced by the respondents, to sustain the allegation, against the objection of the libellants.

The bill of lading was in the usual form. It acknowledged the receipt of a certain number of bales of cotton at Vienna, to be delivered at Mobile, "dangers of the river excepted." As to this cotton, the boat and its owners became answerable for accidents and thefts, and even for a loss by robbery. They became answerable for all losses which do not fall within the excepted cases of the act of God and public enemies. This, as Chancellor Kent remarks in his Commentaries, "has been the settled law of England for ages; and the rule is intended as a guard against fraud and collusion, and it is founded on the same broad principles of public policy and convenience which govern the case of inn-keepers."—2 Kent, 598.

"The only exception expressed in the contract in this case is, 'dangers of the river.' The only exceptions implied by law, are, the act of God, or of the public enemies." *Cox, Brainard & Co. v. Peterson*, 30 Ala. 608.

Whilst in all contracts, "as to the subject-matter of which known usages prevail, parties are found to proceed with the tacit assumption of these usages"; and whilst " parol evidence of custom and usage is always admissible to enable us to arrive at the real meaning of the parties, who are naturally presumed to have contracted in conformity with the known and established usage"; yet, "it is not admitted

to contradict, or substantially to vary, the legal import of a written agreement. The usage of no class of men can be sustained in opposition to the established principles of law." Addison on Contracts, 853; *Price v. White*, 9 Ala. 563; *McClure & Co. v. Cox, Brainard & Co.*, 32 Ala. 617.

The true and appropriate office of a usage or custom, is correctly stated by Judge Story, in the case of the *Schooner Reeside*, 2 Sumner, 567. In that case, it was attempted to vary the common bill of lading, by which goods were to be delivered in good order and condition, "*the danger of the seas only excepted,*" by establishing a custom that the owners of packet vessels between New York and Boston should be liable only for damages to goods occasioned by their own neglect. In delivering the opinion of the court, Judge Story said: "The true and appropriate office of a usage or custom is, to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications and presumptions, and acts of a doubtful or equivocal character. It may be also admitted to ascertain the true meaning of a particular word, or of particular words, in a given instrument, when the word or words have various senses, some common, some qualified, and some technical, according to the subject-matter to which they are applied. But I apprehend that it can never be proper to resort to any usage or custom to control or vary the positive stipulations in a written contract, and, *a fortiori*, not in order to contradict them. An express contract of the parties is always admissible, to supersede, or vary, or control a custom or usage; for the latter may always be waived at the will of the parties. But a written and express contract can not be controlled, or varied, or contradicted by a usage or custom; for that would not only be to admit parol evidence to control, vary, or contradict written contracts, but it would be to allow mere presumptions and implications, properly arising in the absence of any positive expressions of intention, to control, vary, or contradict the most formal and deliberate written declarations of the parties."—See, also, 2 Parsons on Contracts, note on

HARVARD LAW SCHOOL LIBRARY

page 59, and authorities there cited; *Howe & Bokee v. The Mutual Ins. Co.*, 1 Sanford's Sup. Court Rep. 137.

" It may be difficult to draw the precise line of distinction, between cases in which evidence of usage and custom ought to be admitted, and cases in which it ought not to be admitted." Upon this question, "much confusion and inaccuracy have crept into the adjudged cases, so that any attempt to reconcile them would necessarily prove abortive."—*McClure & Co. v. Cox, Brainard & Co., supra*; *Barlow v. Lambert*, 28 Ala. 704. But we think it clearly settled by the decided weight of authority, that a general usage, the effect of which is to control rules of law, is inadmissible; and that the clear and explicit language of a contract cannot be enlarged or restricted by proof of a custom or usage.

The decisions of this court upon the question have generally been in accordance with this view.—*Andrews v. Roach & Caffey*, 3 Ala. 590; *Price v. White*, 9 Ala. 563; *West, Oliver & Co. v. Ball & Crommelin*, 12 Ala. 340; *Ivey v. Phifer*, 13 Ala. 821; *Petty v. Gayle*, 25 Ala. 472; *Barlow v. Lambert*, 28 Ala. 704; *Ala. & Tenn. Rivers R. Road Co. v. Kidd*, 29 Ala. 221; *Smith & Holt v. Nav. Ins. Co.*, 30 Ala. 167; *Cox, Brainard & Co. v. Peterson*, 30 Ala. 608; *McClure & Co. v. Cox, Brainard & Co.*, 32 Ala. 617; *Jones v. Fort*, 36 Ala. 422.

The decision in *Steele v. McTyer's Adm'r*, (31 Ala. 677,) lays down a contrary principle; and so much of that decision as holds that parol evidence is admissible, to show that by a custom existing on a particular river, flat-boatmen were not responsible for a loss caused by dangers of the river, although the bill of lading contained no such exception, being in opposition to the principle announced in this opinion on that question, is overruled.

In *Sampson & Lindsay v. Gazzam*, (6 Porter, 123,) it was held to be permissible for the owner of a steamboat, when sued for the loss of goods by fire, to show by parol that the exceptive words, " dangers of the river," in a bill of lading, by custom and usage include dangers by fire. This decision has been so often recognized and followed by this court, in cases involving the *identical* question, that the

principle established by it must now be regarded as the settled law of the State, in its application only to cases of the particular class to which it specially relates; we are unwilling to extend its application beyond this limit.—See *Hibler v. McCartney*, 31 Ala. 501.

The rule which makes the common carrier in the nature of an insurer, and answerable for every loss not attributable to the act of God or public enemies, according to Lord Holt, " was a politic establishment, contrived by the policy of the law, for the safety of all persons, the necessity of whose affairs obliged them to trust those sorts of persons;" "it was introduced to prevent the necessity of going into circumstances impossible to be unravelled." "If it were not for such a rule, *the common carrier might contrive, by means not to be detected, to be robbed of his goods in order to share the spoil.*"—2 Kent, 603.

The same public policy which established this rule, and which has continued it in existence for ages, forbids its destruction at this day in any locality, by any pretended custom; especially when the business of common carriers has so much increased, and the necessity for the rule, instead of being diminished, is also increased. The custom, then, sought to be established in this case, is contrary to law, in contravention of a sound public policy, and can not receive our sanction.

It follows that the court below erred in overruling the designated exception to the answer of respondents, and in admitting parol evidence to establish the custom relied on; and its decree must be reversed, and the cause be remanded.