HENRY C. LANG, plaintiff in error, vs. THOMAS E. BROWN, defendant in error.

[1.] It is unnecessary to make one, or the representatives of such an one, a party to a bill, whose name appears in a bond or agreement, as payee or obligee, when such an one had no real or actual interest in the transaction, nor could take any benefit under it, especially when it appears that the name was inserted therein, solely for the benefit of a third person named in the bond or agreement.

[2.] H. C. L. held the titles to the one-half of a tract of land that T. E. B. had bought and paid for, to secure himself against loss, on account of T. E. B's half of the expenses that might be incurred in the erection of a mill on said land that they were building in partnership. On a bill filed by T. E. B., to compel a conveyance to him, from H. C. L., of his part of the land, alleging that his share of the expenses had been fully paid to H. C. L., it was no error in the Court to charge the jury, on the trial, " that even if they found that complainant had not paid the defendant one-half the expenses of erecting the mill on the premises, they might still decree against the defendant, a specific performance of the contract, to convey a moiety of the land and improvements to complainant; at the same time requiring complainant to pay one-half the said expense, or so much thereof as they might find unpaid and due the defendant;" but such charge submitted the question on which they were to pass, on its merits fairly to the jury.

[3.] A new trial will not be granted when the verdict is sustained by the evidence, and no injustice done.

Lang. vs Brown.

In Equity, in Washington Superior Court.    Tried before Judge HOLT, at September Term, 1859.

This was a bill in equity by Thomas E. Brown against Henry C. Lang, setting forth that complainant and defendant, in the year of 1840, bought from Morgan Brown, the father of complainant, a tract of land containing nine hundred acres, and formed a partnership for the purpose of erecting a saw and grist mill.    That complainant being under age, it was agreed that title to said land should be made to defendant alone, but that complainant should pay half the purchase money, and that upon the payment thereof, and half the expense of erecting said mills, that defendant would execute to him, or to Morgan Brown, titles to one moiety of said premises and improvements; and that this agreement was contained in an obligation in the form of a penal bond executed by defendant, and dated 20th April, 1840, and which is made an exhibit to the bill.    That said mills were erected and went into operation in 1841; that they were built by the joint labor and expenditure of complainant and defendant, at the cost of about two thousand dollars, of which amount complainant contributed about six hundred dollars in money, and about seven hundred dollars in work, lumber, provisions, and other materials, and that complainant likewise paid his half of the original purchase money of the land.

The bill further states, that said mills were under the superintendence and direction of defendant, from the time of their completion in 1841, till 1846, when said partnership was dissolved; and that during all that period, defendant received the income and profits thereof, amounting to one thousand dollars per annum.

The bill further states, that defendant refuses to account with complainant for said income and profits, or to make and deliver to him titles to one-half the said land and mills, and prays that he be decreed to account and to specifically per-

form the contract aforesaid, in relation to said premises, and to execute titles to complainant for one moiety thereof.

The answer of defendant admitted the purchase of the land, and the formation of the partnership, as stated in complainant's bill, and that complainant paid one-half the purchase money; that defendant did agree, that upon the payment by the complainant of one-half the purchase money, and one-half the expenses incurred in erecting said mills, that he would execute to him titles for one-half of said premises.

The answer further alleges, that defendant expended in the erection of said mills $2,370 00; that complainant worked on said mills while they were being built about six months, and his services might have been worth one dollar per day, but denies that he furnished lumber or hands to the amount of seven hundred dollars, or any sum, or that he furnished provisions to an amount exceeding fifty dollars.

The answer further states, that defendant paid out other large sums in repairing the dam and machinery of said mills, which were twice injured by high water and freshets. He denies that the income and profits of the mills were as large as stated by complainant, but on the contrary, avers that they were not more than sufficient to pay expenses, &c.

To his answer defendant appended the following exhibit, and declared his willingness and readiness to make titles to complainant for one moiety of the land and mills, upon payment of the money expended by him in the erection and repairs of said mills.

The following is the exhibit to defendant's answer, viz:

HENRY C. LANG,                                    Cr.

| 1840 | By amt. paid for half the land, | - | | | | $1,100 | 00 |
| " | " expenses building mill, | - | - | | | 2,370 | 00 |
| 1841 | " repairing, | - | - | - | - | - | 900 | 00 |
| 1842 | " expenses of grist mill, | - | - | | | 200 | 00 |
| " | " " repairing dam, | - | - | - | | 600 | 00 |
| | Carried over, | - | - | - | - | - | $5,170 | 00 |

Lang vs. Brown.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Brought over, | - | - | - | - | - | $5,170 | 00 |
| 1842  By expenses of working mills from 1841 to | | | | | | | |
| | 1846, | - | - | - | - | 2,500 | 00 |
| | | | | | | $7,670 | 00 |
| *Dr.*  To receipts of mills from 1841 to 1846, | | | | | | 3,500 | 00 |
| | | | | | | $4,170 | 00 |

THOMAS E. BROWN,                             *Cr.*

| | | | | | |
|---|---|---|---|---|---|
| 1840  By amt. paid for half land, | $1,100 | 00 | | | |
| "  6 months work, | - | 150 | 00 | | |
| "  provisions furnished, | - | 50 | 00 | | |
| | | $1,300 | 00 | | |
| To amt. received from mills | - | 500 | 00—— | -$800 | 00 |
| | | | | $3,370 | 00 |
| Due to Henry C. Lang, | - | . | - | - | $1,685 | 00 |
| Int. from 1st Jan., 1842, | - | - | - | - | 2,156 | 00 |
| | | | | | $3,841 | 00 |

The case was heard upon the bill, answer and proof; and after argument, counsel for defendant requested the Court to charge the jury, " that without some evidence of the assent on the part of Morgan Brown or his representatives to this suit, the Court will not decree a specific performance of the contract contained in said bond;" which charge the Court refused, but charged, " that if the jury found that complainant had not paid defendant one-half the expenses of erecting the mills, yet they might decree against defendant a specific performance of the contract, at the same time requiring and decreeing that complainant should pay one-half said expenses, or so much thereof as they might find unpaid and due to defendant.

To which charge and refusal to charge defendant except ed

The jury returned the following decree : " We the jury decree that the defendant, Henry C. Lang, do make a good

and lawful title to the complainant, Thomas E. Brown, of the one-half interest in the land described in said bill; and that the said Henry C. Lang do pay to the said Thomas E. Brown, the sum of seven hundred and fifty dollars; and we decree costs to complainant."

Whereupon, defendant moved for a new trial, upon the grounds that the verdict was contrary to law and the evidence and the charge of the Court; and upon the further ground that the charge and refusal to charge of the Court, as above stated, were contrary to law.

After argument, the presiding Judge refused the motion for a new trial, the complainant having first remitted and released the sum of seven hundred and fifty dollars found for him by said verdict.

To which decision counsel for defendant excepted, and assigns the same as error.

WM. S. ROCKWELL, for plaintiff in error.

JNO T. SHEWMAKE, contra.

By the Court.—LYON J. delivering the opinion.

On the trial, complainant put in evidence the bond of Henry C. Lang, of which the following is a copy:

"GEORGIA, WASHINGTON COUNTY.

Know all men by these presents, that I, Henry C. Lang, am held and firmly bound unto Morgan Brown, in the penal sum of twenty-two hundred and eight dollars, the payment of which, well and truly to be made, I bind myself, my heirs, executors, administrators and assigns, jointly and severally, firmly by these presents. Witness my hand and seal, this twentieth day of April, 1840.

"The condition of the above obligation is such, that whereas, the said Henry C. Lang has warranty titles to three several tracts of land, containing in the whole, nine hundred and sixty acres, more or less; one tract called the Martin tract,

on the south side of Lamar's creek; the other two tracts lying the north side of said creek, called the Nancy Hodges and Hugh Gilmore tract, lying broad side of each other; and whereas the said Henry. C. Lang and Thomas E. Brown have undertaken and agreed to build a set of saw mills; and grist mill, if deemed necessary, upon and across said Lamar's creek:

"Now, if the said Thomas E. Brown, or the above named Morgan Brown, shall pay one-half of all the expenses of building and erecting the said mills, including the services of the said Henry C. Lang, at such price per day as shall be hereafter agreed upon, in articles of agreement, to be entered into between the said parties, then, and when the said Thomas E. Brown or Morgan Brown shall pay the one-half of the expenses of building and erecting the mills aforesaid, or shall release the said Henry C. Lang from all the liability for the one-half of said expenses of said mill, then, and in that event, the said Henry C. Lang binds and obligates himself, his heirs, executors, administrators and assigns, to make and execute good and sufficient titles to the one moiety or half of said three several tracts of land and mills, and such other improvements as shall be erected thereon, to the said Thomas E. Brown, or to the said Morgan Brown, or both, as shall be required when the said mills are done, and one-half of of the said expenses paid as aforesaid, then, on the due and faithful executing titles as required, this bond to be null and void, or else to remain in full force and virtue, in law and equity.

" Given under my hand and seal, this the day and year above written.

HENRY C. LANG, [L. s.]

" Signed, sealed and delivered in the presence of

NATHAN RENFROE,

WILLIAM RENFROE."

The complainant also put in evidence certain parts of the answer of defendant, and introduced *John Massey*, who tes-

tified : That he was frequently at the mill during the progress of its erection; that his father, Bennett Massey, worked there during the time of the erection of the mill, and after its completion about one year; that his services were worth one dollar per day; that he received in payment some bacon and meal of complainant; that he saw negroes there that belonged to Morgan Brown, viz : Levi, George and Isaac, working during the time of its erection; also wagon, cart and teams, that belonged to Morgan Brown, used at the mill of complainant and defendant, during the time of its erection; he supposes they were furnished by complainant; he saw them at the place where Thomas E. Brown lived. That defendant rented the land, in the year 1850, to Lyons; that he received thirty-five dollars for rent of land; planted in cotton; that he saw him receive seven or eight cart loads of corn—a load containing ten or twelve bushels, worth seventy-five cents per bushel; witness thought about one hundred bushels of corn. That defendant rented the land to Cheeves in 1851; he supposes about thirty-five acres, worth about fifty cents per acre; that defendant worked on the mill during the time of its erection; witness supposes his services worth as much during the erection of the mill; that the defendant had the general superintendence of the mill from 1841 to 1846; that after the erection of said mill, complainant was at the mill about as much as defendant; that during the erection complainant worked at it.

*Levin Lord*, sworn on behalf of complainant, who testified : That the mill broke twice—once in 1841, and in 1846; that the tumbling dam was 196 feet long, and the dirt portion 120 feet long; the first broke; that about half the tumbling dam washed away; that the neighbors gave defendant some work, in repairing the injury; that witness gave one day's work; don't know how long it took, or how much it cost to repair the injury; the last, a portion of the dirt dam, was washed away 40 or 50 feet; lived on the place; was near the mill at the time of the first break, and was there occasion-

ally, and saw four or five hands working there, and that some were complainant's; damages in 1846 witness thought slight.

*Thomas Lyons*, sworn on behalf of complainant, testified: That he rented the land belonging to the mill tract in the year 1850 of defendant; that he paid thirty-five dollars rent for the cotton land, and one-third of the corn, supposed to be 60 or 70 bushels, to defendant; defendant admitted to witness that he rented land of mill tract to Abner Cheeves in 1850 and 1851.

*Zeby Smith*, sworn on behalf of the complainant, testified: That the mill broke in 1846; that the neighbors assisted in repairing the injury; don't know how many hands hired on the repairs; witness worked one week; don't know the length of time or cost of repairs; did not charge for his work; the neighbors of the upper settlement, for their accommodation, it being the nearest mill, gave defendant a week's work in repairing damages; witness never knew of any charge for their work; about 20 feet of the dirt dam was washed away next to the waste ways.

*Isaac Maye*, sworn on behalf of the complainant, testified: That about one-half of the tumbling dam, and a small portion of the dirt dam, was washed away by the freshet of 1841; that the repairs were made with the old timbers, which had washed out; that the neighbors gave some work in repairing the breach; don't know how long it took to repair the injury, or what it cost; Brown had hands there in repairing; in 1846 the dirt dam broke to the extent of forty or fifty feet, and witness sent a hand two days, and the neighbors sent help to repair it; damage was repaired in 10 or 12 days at the farthest.

Defendant put in evidence other parts of his answer, which had not been read by complainant. It was distinctly admitted in the answer, that, at the time of making this agreement, complainant was an infant; that he had paid for one-half the land; that defendant was holding the title in his name, for an indemnity for complainant's share of the expenses of

the erection of the mill; that the complainant, at the time of the agreement, was totally destitute of property; and that he, defendant, was induced to enter into said partnership, and to purchase the tract of land, on the representation of Morgan Brown, the father of complainant, that he, the said Morgan, would advance his son, the complainant, all the funds necessary to defray one-half the expenses of erecting and putting in operation said mills; that complainant had himself worked on the mills the whole time of their erection, &c.

The defendant answered further, that the mills were erected at a cost to him of $2,370; that the dam had broken three times, the repairs of which cost him at one time $900, and at another $600, and the third time $400; that he had added a grist mill, at a cost of $200; that he had realized from the profits of the mill, after deducting all expenses, the net sum of $1,500; that defendant had received in the mean time about $500; and appended in his answer a statement which, in his answer, he refers to, as presenting a full and true statenent of the copartnership transactions, and that statement shows a *balance of principal and interest claimed to be due* defendant, of $3,841 00.

[1.] The first alleged error complained of, was the refusal of the Court to charge, as requested by defendant, and that simply involves the question, whether Morgan Brown, or his representative, was a necessary party to the bill. It is true that Morgan Brown was the obligee of the bond, but the whole instrument, in connection with the answer of defendant, shows that he had no interest whatever in the transaction; that his name was inserted for his son's benefit, who was a minor, and that if title had been made to him, he would have held it in trust for his son, the complainant. Then, as he had no interest, and could have taken none under that agreement, it was not necessary to make him or his representative a party. The Court was therefore right in refusing the request.

[2.] We see nothing exceptionable in the charge as given.

The whole question for the consideration of the jury was, whether the complainant had paid or contributed his half of the expenses of the erection of the mill; and if not, what was the balance still due by him on that account, to the defendant. If there was no balance due, complainant had a right to have a conveyance for one-half the lands. If there was a balance, it was not only proper, but the duty of a Court of Equity to ascertain what that balance was, and order its payment. The parties could not agree upon it, and how else was that question to be settled? And when that balance should be ascertained, it was the duty of the Court to shape its decree, so as to protect both parties; and we think the Court submitted the question fairly to the jury. Had a balance been due by complainant, according to the verdict of the jury, the charge contemplated the payment of that balance, upon the execution of the conveyance—the one depended on the other. How the rights of defendant were put in jeopardy, or how the jury could have been misled by the charge, it is impossible for us to see. Suppose there had been a balance due to defendant, and the jury had so decreed, but the complainant, from his insolvency, could not have paid it, would he, in consequence of such inability to pay that balance, have lost what interest he did have in the land? Certainly not. On the contrary, the Court would have directed a sale of the premises, and from the proceeds paid, first, that balance to the defendant, and the remainder to the complainant, to whom it in equity belonged.

The only remaining question is, whether the verdict of the jury, was contrary to the evidence, the weight of evidence, or the charge of the Court.

[3.] As the Court submitted the case to the jury fairly on the facts, we need only inquire, whether the verdict was contrary to the evidence, or weight of evidence. To justify this Court in granting a new trial on this ground, the verdict must be manifestly, and palpably contrary to the evidence, so clearly so, as to strike the mind at the first blush. A new

trial will not be granted upon matters of facts, unless upon the most unequivocal evidence, that injustice has been done the party complaining.

A verdict will not be set aside, and a new trial granted, when the case has been fairly submitted on its merits, and no rule of law violated, nor manifest injustice done; although there may appear to have been a *preponderance* of evidence against the verdict; especially if the Judge who tried the case is satisfied with the finding.

These are some of the rules this Court has laid down by which it will be governed in applications for new trial on this ground.

Let us test this application by these rules: The complainant and defendant, had purchased the tract of land together; complainant had paid his half of the purchase money; and defendant continued to hold the titles in his name, for the half that belonged to complainant, to secure and protect himself from any loss, on account of complainant's half of the expenses of the erection of the mills; in other words, the defendant's claim on complainant's half of the land, was in the nature of a mortgage, to secure himself against that half of the expenses of the building of the mills, which the complainant by his contract was to pay; or such part of the same, as he should be compelled, by reason of his connection with the transaction, to contribute or advance, either in money, labor or material, over and above his own share. In this view of the case, and it is a simple and true one, it was incumbent on the defendant, to affirmatively show, how much more than the one-half of the whole expenses of building, he had contributed or advanced; or, how much of complainant's half was still unpaid, and was still due, and owing to him on this account, so that the Court might specifically enforce its satisfaction, out of complainant's part of the land, according to the contract of the parties. To show what that balance was, the defendant relies on the statements in his answer. The answer, in our opinion, is very unsatis-

factory for that purpose. The charge in the bill, to which defendant responds, is this: "In pursuance of said agreement, the said mills were erected and completed, and put into operation in the year 1841, by the joint labor of complainant and defendant, at the cost of about the sum of $2,000, to which amount, complainant contributed about $1,300, in money, lumber, hands, provisions and other materials." Defendant, after admitting that about the 1st of April, 1840, he and complainant hired hands, and commenced the work; and that the mills were completed, so as to commence sawing about the first of the year 1841; adds that, "it was done, at an expense to him of $2,370, including the charge of defendant, for two hundred days work, in building the mill, at the rate of three dollars per day, making $600, which per diem wages was agreed on, between complainant and defendant, at the time of the commencement of the work." This sum of $2,370, is stated in round terms; no items, except that of his own labor, are furnished, so that complainant might attack them; no evidence whatever, of what he furnished in the way of materials, provisions, hands or money, to swell his account to this large sum. It was unsupported by the first particle of testimony; besides, it is not in response to any charge in the bill. The charge was that the mill was built by their joint labor, at the cost of about $2,000; that is not answered; and nothing is said in the bill, as to what was, or was not the expense of the defendant. The jury were then at liberty to disregard that item. It was in proof, however, that the complainant worked on the mill, during the whole time of its erection. By John Massey, that Bennett Massey worked on the mill during its erection, about one year, and his services were worth one dollar per day; that complainant paid him for his work, in some bacon and meal; and that he saw three negro men belonging to Morgan Brown, working on the mill during its erection; furnished as he supposed by complainant; also, wagon, carts and teams, belonging to Morgan Brown, em-

ployed in the erection of the mills. He supposed that they were furnished by complainant, from the fact, that he saw them at the place where complainant lived." Suppose, however, that complainant did not furnish these hands and teams, but that Morgan Brown did, is it likely, that defendant would have paid Morgan Brown for their use, when it was a part of the agreement; and which induced the defendant, as he says, to enter into it, that Morgan Brown would advance the means necessary, to enable his son, the complainant, to contribute his share of the expenses? It is hardly probable. With all this evidence, in support of complainant's compliance with his part of the agreement, defendant offers nothing to show, that in the employment of hands, furnishing materials, paying out money, &c., he contributed more than his half of the expenses of the building of the mill, and nothing towards even that, except his own labor.

We think, here was sufficient evidence to induce the jury, to conclude, that complainant had contributed, at least, his ⸱ share of the expenses, in building the mills. At all events, with this evidence before us, we will not interfere with the finding.

In addition to the item of $2,370, defendant claims in his answer, that he was put to an expense of $900, in repairing a breach in the dam, and an injury to the mill in 1842. Again, in 1846, by another breach of the dam, of $600. Each of these statements, like the first, is unsupported by evidence, or specifications of items; and the evidence offered, shows, that not only complainant with his hands, assisted in each of the repairs, but that the neighbors gave their assistance, freely, in repairing the breaches, without any charge. That the breach of 1846, was slight, and was repaired in ten or twelve days. And, in addition to all this, the defendant had the entire use of the mills, from their erection, until the mills were abandoned, excepting a few mill accounts, that were collected by complainant, not ex-

ceeding in the whole, $500, together with the use and rent of the land the whole time.

It is said, that the jury made a mistake in their verdict; that instead of finding a balance of $750, due by complainant to defendant, as they intended; their finding was $750 against defendant, and in favor of complainant. There is no foundation in the record, to warrant the conclusion, that there was a mistake; on the contrary, much to satisfy us, that the finding of the jury was just what they intended.

From all the evidence before the jury, it was fair for them to conclude that complainant had in the erection of the mills, and repairing breaches, contributed fully, his share of the expenses and labor in so doing. And as defendant had the entire use of the mills, besides the rents of land, and had realized a net profit of $1,500; therefore, according to his own showing, it was still more reasonable for them to conclude, that complainant ought to have half of that sum; and such no doubt was the result of their deliberations, and the true secret of that part of their verdict.

A jury of the county where this transaction occurred, and who had all the facts, the parties, their statements, and the witnesses before them, was the proper forum for the trial and adjustment of the differences between these parties; and having done so, after the case had been fairly submitted to them on its merits, no rule of law violated, nor manifest injustice done; sustained, as their verdict is, by the evidence, as we think, their action must be final and conclusive.

Judgment affirmed.