## SOUTHERN RAILWAY COMPANY *v.* PARRAMORE.

A plaintiff can not declare upon a special contract with a carrier and then, by amendment, claim that he is not bound by the terms of such special contract, and add a new and distinct cause of action.

Argued February 22, — Decided March 4, 1904.

Action for damages.     Before Judge Lumpkin.     Fulton superior court.     April 29, 1903.

*Dorsey, Brewster & Howell, Sanders McDaniel,* and *J. D. Bradwell,* for plaintiff in error.     *J. Howell Green,* contra.

TURNER, J.   P. J. Parramore brought a suit against the Southern Railway Company, alleging that on a certain day he "entered into a contract with said railway company, whereby it was to transport for petitioner five horses and four mules from Gainesville, Georgia, to Sanford, Florida, under the terms and conditions set out in said contract," a copy of which was attached to his petition as an exhibit.   He further alleged that while the stock was in transit, and while in the yards of the company at Atlanta, the door of the car in which the stock was shipped came open and one of the horses fell from the car, falling between it and a platform near which the car was standing, and receiving injuries from which it died.   The plaintiff charged that these injuries to the horse were "due to the negligence of said railroad company, in that the car in which said horses were shipped was defective, the door to said car not being securely fastened, there not being sufficient fastenings upon the same."   The value of the horse was averred; and the plaintiff also alleged, that, by mistake of the agent of the company who made out said contract of shipment, the initials of plaintiff's name were transposed, but that he was "the party to whom said live stock was shipped, was the owner of the same and the party with whom said railroad company dealt, and that said transposition of initials was a mere clerical error."   He accordingly prayed that this error be corrected, and that the contract declared on should be in this respect reformed.   He also prayed that he might recover of the defendant company the alleged value of the horse, $200.   The exhibit annexed to the petition purported to be a "live stock contract" between the Southern Railway Company and its connecting carriers, as parties

of the first part, and "J. P. Parramore, party of the second part."
It recited that the company had received the live stock to be
transported in accordance with the terms of the agreement therein
set out, and to be delivered to the consignee at Sanford, Fla.
This paper further recited that in consideration of a reduced rate
of freight, therein named, the party of the second part covenanted
and agreed that he had examined and found in good order and
condition the car provided by the company for the transportation
of said live stock, and had accepted the same and agreed that it
was suitable and sufficient for said purpose.   There were various
other stipulations and conditions set forth as constituting part of
the agreement; but it is not essential, for the purposes of this
opinion, that they should be set out at length.   The original con-
tract was, if the alleged copy of it be correct, signed in the pres-
ence of two witnesses by "W. A. Ramson, Agent for the Com-
pany," and by "J. H. Martin," his signature appearing in the
space provided for that of the shipper, with no indication as to
the capacity in which he signed.

The defendant demurred to the petition, on the ground that the
facts therein set forth and the exhibit attached thereto disclosed
the making of a contract under the terms of which the company
was not liable for the damages claimed.   The court passed an or-
der reciting that the demurrer was "sustained, with leave to
plaintiff to amend in ten days."   Within the time limited the
plaintiff offered an amendment, the material allegations of which
were, after certain portions of it had been eliminated by order of
the court, substantially as follows:   The "contract set out in
plaintiff's original petition is nothing more than the bill of la-
ding" issued by the company; and "as the same was not signed by
the plaintiff, or by any one authorized by him to sign it for him,"
none of the "statements in said bill of lading in favor of the de-
fendant [could] be invoked by said defendant;" the recital in the
bill of lading to the effect that the shipper had examined the car
and found it in good condition and suitable for the transportation
of the stock, was "not true, but on the contrary the car in which
said live stock was shipped was in bad condition at the time that
said live stock were loaded upon it in Gainesville, and at the time
it was started from Gainesville with said live stock in it, the de-
fects" set forth in plaintiff's original petition then existed; and

that, "in addition to the freight named in said bill of lading, plaintiff paid said defendant company the local rate on said live stock from Gainesville to Atlanta, which was by mistake omitted from said bill of lading, though collected from plaintiff by said railroad company; wherefore plaintiff prays that said bill of lading be further reformed by inserting said local freight." To the allowance of this amendment the defendant objected on the grounds, (1) that the plaintiff thereby sought to introduce a new, additional, and independent cause of action, and (2) that the effect of such amendment, if allowed, would be to convert a suit upon contract into a suit in tort. These objections, which the defendant urged by way of demurrer to the proposed amendment, were overruled by the court, and the defendant excepted.

In the original petition the plaintiff declared upon a contract, a copy of which he attached as an exhibit. The original of this document appears to have been a special contract of shipment containing the provisions and stipulations hereinbefore recited. The amendment proposed by the plaintiff disclosed a plain effort on his part to repudiate the special contract and entirely change the character of the action. It is true that the contract was signed by J. H. Martin, instead of by the plaintiff, Parramore; but the latter apparently accepted the reduced rate of freight and other benefits under it, and ratified and adopted it by suing upon it. It might be presumed that Martin had authority from the plaintiff to make the contract in his behalf, from the manner in which he declared upon it in his original petition; but, according to a well-considered opinion of this court, it is not necessary to assume that Martin had express authority from the plaintiff to enter into a special contract whereby the defendant company limited the liability which would otherwise rest upon it as a common carrier. *Central Ry. Co.* v. *James,* 117 *Ga.* 832, 836. In that case it did not appear that the person who signed the contract disclosed to the company the name of his principal, as was done in this case. Yet, in discussing this feature of the case, the Chief Justice said (page 834): " Of course, where the owner of goods does not attend to their shipment in person, but procures another to act in his behalf, who does so without disclosing the name of his principal, the latter is bound by the terms of the contract which his agent makes with the carrier, to the same extent as

though the contract was made by the principal in person, irrespective of the question whether the agent did or did not go outside of the authority with which he was vested. This is true for the all-sufficient reason that the principal can not take advantage of the contract made in his behalf without fully ratifying the act of his agent and becoming bound thereby." We therefore think the amendment offered by the plaintiff in the present case was not allowable, for the reason that he thereby sought to repudiate the contract upon which, in his original petition, he based his cause of action, and to substitute therefor an entirely new and distinct cause of action.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*