## ARMISTEAD et al. v. WEAVER.

1. Where an affidavit of illegality was interposed to the foreclosure of a mortgage on personalty, grounds thereof which set up parol agreements between the parties, made at or before the giving of the mortgage, and conflicting with its terms, were properly stricken on demurrer.
2. Where a mortgage on personal property is foreclosed in the statutory manner, and the defendant interposes an affidavit of illegality, but fails to replevy the property, it may be sold by special order of the court as in case of perishable property or property which is expensive to keep or liable to deteriorate from keeping.
 (a) The allegations of the affidavit of illegality as to whether no order for the sale was granted at all, or whether one was granted which was averred to be illegal, and as to any illegality in the manner of conducting the sale, were vague, general, and insufficient to make any issue requiring submission to the jury.
 (b) If by means of an amended affidavit of illegality the sale by the sheriff, which had taken place pendente lite, could be attacked and an accounting be had for the value of the property thus sold, the allegations of the affidavit were insufficient, and were properly stricken on demurrer.
 (c) The case differs from that of *Haunson* v. *Nelms,* 109 *Ga.* 802 (35 S. E. 227), which arose on an equitable petition to set aside a sheriff's sale on account of the conduct of the sheriff.
OCTOBER 15, 1913.

Affidavit of illegality of execution.  Before Judge Daniel.  Pike superior court.  October 9, 1912.

*E. C. Armistead,* for plaintiff in error.  *E. F. Dupree,* contra.

LUMPKIN, J.  G. A. Weaver Jr. foreclosed a chattel mortgage by making the statutory affidavit.  The execution issued thereon was levied on the mortgaged property, consisting of two horses.  The defendants filed an affidavit of illegality, which, as amended, made substantially the following points:  (1) At the time of making the purchase of the two horses by the defendants from the plaintiff, it was agreed among the parties that if the defendants should desire

to sell either of the horses, they should have the right to do so, provided the purchase-price of the horse thus sold should be paid to the mortgagee, leaving the other horse to stand for the balance due on the debt. Under and by virtue of this agreement the mortgagors sold one of the horses and paid the purchase-price to the mortgagee, "and by the agreement said bay horse was then relieved from the lien of the mortgage." (2) At the time of the purchase of the horses it was further agreed among the parties, that, at the maturity of the note given for the purchase-money, if the mortgagors should have then paid to the mortgagee one half of the amount due for the purchase-price, the mortgagee would extend the date for the maturity of the note for the space of twelve months. At the maturity of the note the mortgagors had paid one half of the amount due, and they demanded an extension of the note for twelve months in accordance with the agreement, but the mortgagee refused to make such extension. (3) After the filing of the illegality the sheriff sold one of the horses described in the mortgage for the sum of $51 "and perhaps a few cents," the sale being claimed to be made under "what is known as a short-order sale." The illegality first averred that the sheriff had no order for the sale, but immediately proceeded to allege that the order was illegal and void and gave the sheriff no right to sell the horse, though it did not set out the order or show any reason why it was void. It was also alleged that the horse was not advertised "as required by law," but it was not alleged that no advertisement was made or what advertisement there was. It was then alleged that the illegality in the order and the advertisement deterred bidders who otherwise would have attended the sale, and that the horse was sold for $51, and was bought by the mortgagee, although it was worth $175. It was further alleged that the sale was conducted in an unfair manner, because it was advertised to take place within the usual hours of sale, and that as a matter of fact, as soon as the hands of the city clock reached the hour of 10 o'clock, the sheriff put up and sold the horse, in the absence of the mortgagors, "when there were no purchasers present." The mortgagors prayed that the horse be accounted for by the mortgagee at a fair valuation, "which, when done, affiants will pay any remainder that may appear to be due on said debt." On demurrer the affidavit of

illegality and the amendment thereto were stricken, and the defendants excepted.

1. Both of the first two grounds of the illegality are fatally defective, for the reason that they seek to set up a parol contract made before or at the time of giving the mortgage, and by which it was sought to change its terms. There may have been other reasons which would render them demurrable, but this will suffice. It is not the purchaser from the mortgagors who is asserting title; but the mortgagors who are asserting title for him. The agreement set up was not one made after the mortgage was executed, as in *Tucker* v. *Mann*, 124 *Ga.* 1003 (53 S. E. 504), and *Crenshaw* v. *Wilkes*, 134 *Ga.* 684, 687 (68 S. E. 498), but before or contemporaneous therewith. The amount paid to the mortgagee is not stated, so as to make the plea one of partial payment.

2. Taking the pleading most strongly against the pleader, there was no positive and unqualified averment that no order was granted authorizing the sale by the sheriff. The affidavit of illegality did use the expression that the sheriff had no order to sell, but immediately thereafter it attacked the order which was granted, and which it referred to as "the pretended order," as being illegal. It showed no reason, however, why it was illegal. Where a defendant fails to replevy personal property levied on under a mortgage fi. fa., it may be sold by special order of the court as in cases of perishable property, or property which is expensive to keep or liable to deteriorate from keeping. Civil Code, § 3301. The allegations in this ground are vague and consist almost entirely of conclusions rather than of facts. If it be taken for granted that by an amended affidavit of illegality the sale could be attacked and an accounting be had for the value of the horse purchased by the mortgagee, the one filed in this case was too vague and indefinite in its character to raise an issue for submission to the jury.

The case of *Haunson* v. *Nelms*, 109 *Ga.* 802, which was cited by counsel for the plaintiff in error, arose on an equitable petition to set aside a sheriff's sale, where the sheriff had first accepted an affidavit of illegality and agreed not to sell the property, but subsequently changed his mind and sold it in a manner which evidently worked an injustice and a hardship to the defendant. It differs in its facts from the present case.

*Judgment affirmed. All the Justices concur.*