LIVELY *v.* MUNDAY *et al.*

No. 15476.   September 6, 1946.   Rehearing Denied October 11, 1946.

*Carl T. Hudgins* and *Stephens Mitchell,* for plaintiff in error.
*Augustine Sams,* contra.

BELL, Chief Justice. ■ W. W. Lively and L. E. Munday filed suit against C. M. Lively, seeking specific performance. The petition alleged in effect that on January 15, 1945, W. R. Lively and C. M. Lively had agreed in writing to sell to the plaintiffs a tract of land in DeKalb County then owned by the alleged sellers as tenants in common, and that W. R. Lively had accepted payment and executed a deed conveying his one-half interest in the property, but that C. M. Lively had refused to carry out the agreement with respect to his one-half interest; and C. M. Lively alone was sued. The petition was several times amended, and although various general and special demurrers were urged to the original petition and to the petition as amended, the defendant did not object to the allowance of any of the amendments except the first one; and the first question for determination is whether the court erred in allowing that amendment.

The objection was made by demurrer, and presented the contention that the amendment "sets up a new and distinct cause of action, in that an entirely different contract is set up;" reasons for this conclusion being stated in the demurrer.

In the original petition it was alleged "Petitioners attach hereto as Exhibit 'B' a substantial copy of the material portions of a written contract signed by the defendants herein." This averment implied that the contract contained provisions that were not embodied

in the exhibit, but that the plaintiffs did not consider such omitted provisions as being material. In response to a demurrer, that the pleading did not purport to set forth the whole agreement, they offered to amend by inserting additional stipulations in Exhibit B; and, with these stipulations added, the exhibit purported to express an entire agreement. Since it thus appeared that the petition and the amendment referred to the same alleged contract, and that the amendment merely supplied stipulations which had been omitted, the amendment was not subject to objection or demurrer on the ground stated. *Ross* v. *Jordan,* 62 *Ga.* 298 (2); *Quillian* v. *Johnson,* 122 *Ga.* 49 (4) (49 S. E. 801); *Cox* v. *Georgia R. & Bkg. Co.,* 139 *Ga.* 532, 534 (77 S. E. 574); *Klimax Overall Co.* v. *Converse & Co.,* 39 *Ga. App.* 742 (2) (148 S. E. 349). The case differs on its facts from *Lamar* v. *Lamar, Taylor & Riley Drug Co.,* 118 *Ga.* 850 (45 S. E. 671), *Southern Ry. Co.* v. *Parramore,* 119 *Ga.* 690 (46 S. E. 822), and *Cooper* v. *Oglethorpe Savings & Trust Co.,* 147 *Ga.* 570 (4) (94 S. E. 1006), cited for the defendant on this point.

■ In this division, and in those following through division 5, we will consider the grounds of general demurrer. The defendant demurred generally on the ground that the agreement, as shown by the petition as amended, is void and unenforceable for the reason that the description of the land is too vague and indefinite.

There is no merit in this contention. The descriptive language was as follows: "All that tract of land in land lot No. 194 and 205 of the . . District of DeKalb County, Georgia, being . . acres more or less located north of Briarcliff Road and known as the W. W. Lively Estate." This description was prima facie sufficient to furnish a key whereby the land could be identified by the aid of extrinsic evidence, and the allegations of the petition considered as a whole were sufficient, as against a general demurrer, to render such proof admissible. *Hancock* v. *King,* 133 *Ga.* 734 (1) (66 S. E. 949); *Clark* v. *Cagle,* 141 *Ga.* 703 (2) (82 S. E. 21, L. R. A. 1915A, 317); *King* v. *Brice,* 145 *Ga.* 65 (88 S. E. 960); *Lewis* v. *Trimble,* 151 *Ga.* 97 (4) (106 S. E. 101); *Whelchel* v. *Waters,* 152 *Ga.* 614 (2) (111 S. E. 25).

■ It is contended that the petition shows upon its face that the plaintiffs have never tendered the full amount of the agreed purchase-money, and that they have not done or offered to do equity.

The petition was not subject to general demurrer because of any defect in the tender alleged to have been made to the defendant before the suit was filed. This is true for the reason it was alleged in paragraph 15 that, on the date of such tender, the defendant informed the plaintiffs that he would not carry out the contract or accept tender. "As a general rule, a vendee of land, before bringing his action for specific performance, should tender to the vendor the amount agreed to be paid by him before the execution of the conveyance; but tender by the vendee before suit is excused if the vendor by declaration or conduct proclaims that if a tender should be made its acceptance would be refused." *Miller* v. *Watson,* 139 *Ga.* 29 (2) (76 S. E. 585); *Black* v. *Milner Hotels,* 194 *Ga.* 828, 832 (4) (22 S. E. 2d, 780); *Irvin* v. *Locke,* 200 *Ga.* 675 (38 S. E. 2d, 289).

However, even though the plaintiffs may have been excused from tendering the correct amount, or any amount, to the defendant before suit, this did not relieve them from offering in their pleadings to pay the amount which was due or the amount which might be found due by decree of the court. Code, § 37-104; *Miller* v. *Watson,* supra; *Kerr* v. *Hammond,* 97 *Ga.* 567 (1) (25 S. E. 337); *Whelchel* v. *Waters,* supra (4); *Renfroe* v. *Butts,* 192 *Ga.* 720 (3) (16 S. E. 2d, 551). The plaintiffs did allege that they stand ready to pay the purchase-price for said property and do continuously tender the purchase-price to the defendant, namely, the sum of $5,398.18, and stand ready to pay the said money into court. Was this the correct amount under the terms of the contract?

According to the allegations, the total amount of the purchase-price at $50 per acre was $11,090, from which sum the plaintiffs deducted $50, which was alleged to have been paid on or about the date of the agreement; also $231 as expense of the survey, and $12.65 for revenue stamps. This left a balance of $10,796.35, one-half of which, $5,398.18, the plaintiffs alleged they were willing to pay into court as the amount due the defendant for his one-half interest.

The defendant contends that this amount was insufficient for three reasons: (1) The cost of the survey was not a liability of the defendant under the terms of the contract. (2) The plaintiffs were not authorized to make the deduction for revenue stamps. (3)

Since the plaintiffs entered into possession of the property on or about the date of the contract, January 15, 1945, they were liable for interest on the purchase-price from the date of such entry. We will deal with these questions in the order stated.

First. The contract stipulated the purchase-price as being $50 per acre, but did not state how many acres were contained in the tract that was being sold, "known as the W. W. Lively estate." Nor did the agreement contain any provision for a survey for the purpose of ascertaining such acreage. It did contain, however, the following express stipulations: "This contract constitutes the sole and entire agreement between the parties, and no modification hereof shall be binding unless attached hereto and signed by each." "The above price is to be a net price to the seller." Under these provisions, the cost of the survey should fall upon the purchaser and not the seller; and this being true, the plaintiffs could not properly deduct the cost of such survey. Nor were there other allegations to alter this conclusion.

The plaintiffs alleged that the defendant agreed at the time the contract was executed, and also immediately on delivery of possession to the plaintiffs, that a survey would be made in order to determine the exact location of the boundaries; also, that the attached exhibit (copy of the map and survey) was a part of the transaction for the purpose of supplying the boundaries and a more complete description of the property being sold, and that this survey and plat constituted a part of the written agreement. There were additional allegations to the effect that the defendant and W. R. Lively desired to have and pay for a survey in order to determine the exact acreage, and that after two unsuccessful efforts to have a correct survey made, the defendant agreed to have "the plat remade and obtain the services of Gordon Nalley to remake the plat. In finally procuring the services of Gordon Nalley plaintiffs assisted by calling him." It was also alleged that the defendant agreed to pay the expense of the survey and plat.

The question is not whether the defendant could for his own information and benefit have procured the services of a surveyor at his own expense, or even whether, without further consideration, he could have bound himself by an independent subsequent agreement to reimburse the plaintiffs if they would have a survey made. The petition, properly construed, shows upon its face that the al-

leged agreement with respect to a survey was a verbal one, and also that such agreement is claimed and relied on as part and parcel of the contract of sale. Accordingly, regardless of the statute of frauds, the agreement as pleaded, would violate the parol-evidence rule; and especially is this true, in view of the written stipulations, "This contract constitutes the sole and entire agreement between the parties," and "The above price is to be a net price to the seller." Code, § 38-501; *Armistead* v. *Weaver,* 140 *Ga.* 740 (1) (79 S. E. 783); *Curtis* v. *Pierce,* 157 *Ga.* 717 (122 S. E. 208); *Gibson* v. *First National Bank of Marietta,* 158 *Ga.* 350 (2) (123 S. E. 606).

Moreover, even if the petition could be construed as disclosing a valid agreement on the part of the defendant to have a survey made and to bear such expense, it discloses nothing more than a promise or agreement to procure the services of a surveyor, for which the defendant would himself make payment directly to the surveyor, as a matter of business between him and such surveyor. There are no allegations that would authorize the conclusion that the defendant ever agreed for the plaintiffs themselves to contract with a surveyor, pay for his services, and then charge the amount to the defendant in reduction of the purchase-money or otherwise. *Whelan* v. *Edwards & Hackney,* 29 *Ga.* 315; *Patillo* v. *Smith & Clifford,* 61 *Ga.* 265 (2); *Wright &c. Co.* v. *Hammond,* 41 *Ga. App.* 738 (2) (154 S. E. 649).

It follows that the plaintiffs were not authorized to deduct the expense of the survey in arriving at the amount due under the contract.

Second. Nor were the plaintiffs right in deducting the amount of $12.65 for revenue stamps. While, under the Federal statutes, it seems that the duty of seeing that a deed of conveyance bears the requisite amount of revenue stamps is one resting primarily upon the grantor, and that he would be subject to criminal prosecution for failure to perform such duty, the purchaser can not rightfully claim this obligation as a money liability due to himself, and consequently he can not, in making a tender, deduct the amount of such stamps from the agreed purchase-price. Under the facts alleged in the instant petition, the deed would pass title if no revenue stamps should be attached, and the plaintiffs could not in advance charge the defendant with the cost of such stamps, even if

they might do so later, in the event that they should have to bear such expense because of his ultimate failure to meet it. Nothing to the contrary appearing, the presumption is that the defendant will perform his duty in this respect to the Federal Government, if and when he is required by the court to execute a deed. See, in this connection, 26 U. S. C.A., §§ 1809, 1821; *Small* v. *Slocumb,* 112 *Ga.* 279 (3), 282 (37 S. E. 481, 53 L. R. A. 130, 81 Am. St. R. 50) ; Home Title Ins. Co. *v.* Keith, 230 Fed. 905 ; Cole *v.* Ralph, 252 U. S. 286 (40 Sup. Ct. 321, 64 L. ed. 567) ; Schermer *v.* Wilmart, 282 Penn. 55 (127 Atl. 325) ; 16 Am. Jur. 490, § 91 ; 26 C. J. S. 329, § 36.

It is declared in the Code, § 29-115 : "Without an express stipulation to the contrary, a purchaser must pay the costs of the conveyance." One of the contentions of the plaintiff in error is that, under the terms of this section as applied to the facts alleged, the expense of supplying the revenue stamps should fall upon the purchaser, the defendant in error. While we can not agree with this contention, it does not follow ·that the purchaser was entitled to deduct such expense in calculating the amount that he would tender to the alleged seller; and in view of what has just been said, we do not think that the deduction was authorized in the instant case.

Third. Were the plaintiffs liable for interest? As we have seen, the written agreement provided that the purchase-money was "to be paid as follows: Terms cash," and it appears from the petition that the plaintiffs, with the consent of the defendant, immediately went into possession. Under these circumstances, without more, the plaintiffs would be liable for interest from the date of such entry. While the written agreement allowed the purchasers a reasonable time for examination of title, they are not entitled to postponement of liability for interest upon that ground, since they do not show that any time was desired or needed for that purpose. In other words, the plaintiffs did not in their petition claim that there was any delay whatever on account of title or examination of title.

Nor are the plaintiffs excused from liability for interest because of the delay of several months in obtaining a survey to ascertain the number of acres and calculate the amount of purchase-money. This is true for the reason, as we have seen above, that under the

terms of the contract the duty of obtaining such survey rested upon the purchasers, and they could not avoid the payment of interest by waiting on the defendant to have the land surveyed, when he was under no obligation to do so. It follows that the offer of the plaintiffs to pay a stated sum of money into court was insufficient because it did not include an offer to pay interest at the legal rate from and after the date they acquired possession; no tender having been made such as would stop interest. Code, § 20-1105; *Adams* v. *Foster*, 141 *Ga.* 438 (1) (81 S. E. 201); *Perdue* v. *Young*, 154 *Ga.* 220 (3) (113 S. E. 801); Leafgreen *v.* La Bar, 300 Penn. 369 (150 Atl. 656, 75 A. L. R. 312, ann. pp. 325-331).

While the amount of the purchase-money was not actually known at that time, it was nevertheless subject to the rule, that is certain which can be made certain, since it appears from the allegations that the amount could have been readily ascertained by a correct and proper survey. Code, § 57-110; *Bartee* v. *Andrews*, 18 *Ga.* 407 (2); *Council* v. *Hixon*, 11 *Ga. App.* 818 (4), 827 (76 S. E. 603). The allegations do not show any valid excuse for failure to have a survey promptly made, and the plaintiffs should therefore be charged with interest from the date they acquired possession.

The court should not require specific performance at the instance of a purchaser who merely offers to pay into court a specific amount, where that amount is insufficient to discharge his liability under the contract. Such is the present case as related to the duty of the plaintiffs to do equity, and for this reason the petition was subject to general demurrer.

■ Other contentions urged by the defendant under the general demurrer are: That the petition shows the plaintiffs have been in possession of the property and making use of it for a considerable time without offering to pay rent and without showing any legal excuse for failing to tender performance of the contract for several months; and that it is not alleged that they tendered performance within a reasonable time.

Since it appears from the allegations that the plaintiffs went into possession as purchasers, they were not required to account for rents, but instead they were liable for interest, as ruled in the preceding division. As to failure to offer performance for several months, or to allege why performance had not been tendered (as insisted) "within a reasonable time," it is sufficient to say that,

since time is not generally of the essense of a contract and was not by express stipulation or reasonable construction made such in this instance the petition was not subject to general demurrer for either of the reasons just stated. Code, § 20-704 (9); *Ellis* v. *Bryant,* 120 *Ga.* 890 (1) (48 S. E. 352); *Clower* v. *Godwin,* 140 *Ga.* 128 (2) (78 S. E. 714).; *Burkhalter* v. *Roach,* 142 *Ga.* 344 (3) (82 S. E. 1059); *Eaton* v. *Harwood,* 198 *Ga.* 240 (31 S. E. 2d, 473); *Irvin* v. *Locke,* 200 *Ga.* 675 (supra).

■ It is argued further that the petition should have been dismissed on general demurrer under the principle ruled in *Burkhalter* v. *Roach,* 142 *Ga.* 344 (1), 348 (supra), as follows: "The defendant was obligated to sell the land as described by her, and the courts will not compel her to execute a deed to land differently described. What the plaintiff is entitled to, upon payment or tender of the purchase-money, is a performance of the contract which the defendant obligated herself to perform; and that is, to execute a deed having the description of the land as contained in the contract."

While the description by metes and bounds, as contained in the plat and as copied therefrom in the petition, added much to the key language contained in the contract, and while under the *Burkhalter* case the plaintiffs would not be entitled to a decree requiring the defendant to execute a deed containing such enlarged description, the petition would not be fatally defective and subject to general demurrer upon this ground, where the contract did contain sufficient key language, and the allegations were otherwise sufficient to authorize the introduction of extrinsic evidence for the purpose of applying the description expressed in the contract to the land intended to be conveyed; and this is true, even assuming that the plaintiff may have prayed for more with respect to description than the court would be authorized to decree under the contract. *Kupferman* v. *McGehee,* 63 *Ga.* 250 (7). In the *Burkhalter* case, it appeared that the plaintiff was seeking a conveyance that was actually in conflict with the description contained in the contract. For this reason it was held that the petition should have been dismissed on demurrer. In the present case, there is apparently a mere amplification, and not a conflict.

■ In view of what has been said above, in reference to the general demurrers, we deem it sufficient to discuss in particular only a few of the special demurrers.

The allegations as to possession, cultivation, and improvements did not show that the plaintiffs were seeking specific performance of an oral agreement, as insisted; the petition as a whole including the prayers showing clearly that they merely sought a decree based upon the written agreement. Nor were the allegations just mentioned entirely irrelevant to that claim, since they tended in some measure to strengthen the plaintiffs' position. *Stonecypher* v. *Coleman,* 161 *Ga.* 403 (131 S. E. 75); *Bruce* v. *Jennings,* 190 *Ga.* 618, 620 (10 S. E. 2d, 56). Accordingly, there was no merit in any of the special demurrers attacking the allegations in paragraphs 7 and 11 as to possession, cultivation, and improvements, on the ground that they were irrelevant and immaterial and rendered the petition multifarious. *Stephens* v. *Whitehead,* 75 *Ga.* 294 (2); *Allred* v. *Tate,* 113 *Ga.* 441 (39 S. E. 101).

In division 2, we said that the allegations of the petition as to identity of the land described in the contract were sufficient as against a general demurrer to render extraneous proof admissible; nor were these allegations objectionable as being mere conclusions of the pleader, as contended in one of the special demurrers.

It appearing from the allegations that W. R. Lively has no interest whatever in the litigation, and that the failure to make him a party could in no way adversely affect the defendant, C. M. Lively, the petition was not subject to demurrer for failure to make W. R. Lively a party, either as plaintiff or defendant. Code, § 37-1004; *Lang* v. *Brown,* 29 *Ga.* 628 (1); *Fountaine* v. *Urquhart,* 33 *Ga. Supp.* 184 (2); *Wardlaw* v. *Hammond,* 146 *Ga.* 643 (92 S. E. 42); *Spicer* v. *Macklin,* 164 *Ga.* 135 (3) (137 S. E. 828). The allegations as to payment to W. R. Lively and execution of a deed by him were relevant and proper for the purpose of showing why he was not made a party defendant.

Nor was there merit in any of the remaining special demurrers, except that some of those which assailed allegations in reference to tender were apparently meritorious; but, in view of the rulings made in division 3, dealing with the sufficiency of these allegations to withstand general demurrer, it is unnecessary to rule upon the special demurrers attacking the same allegations.

For the reasons indicated in division 3, supra, the court erred in overruling the general demurrer to the petition as amended.

*Judgment reversed. All the Justices concur.*