### INMAN & CO. v. SEABOARD AIR LINE RY. CO.

### SAME v. ATLANTIC COAST LINE R. CO.

(Circuit Court, S. D. Georgia, E. D. January 20, 1908.)

1. PLEADING—AMENDMENT—INCONSISTENT CAUSE OF ACTION.

Where original declarations by shippers for damage to goods not only declared on special contracts evidenced by bills of lading, but attached copies thereof to the declarations and made them a part thereof, they could not thereafter file amendments claiming that they were not bound by the terms of such contracts, and that some of the provisions thereof were illegal and not supported by a sufficient consideration, such amendments being inconsistent with the original causes of action, and changing the nature of the actions from contract to tort.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, §§ 710–729.]

**2.** EVIDENCE—PAROL EVIDENCE—BILL OF LADING AS CONTRACT.

Where shipments in controversy were made under bills of lading as contracts expressing the terms and conditions on which the property was to be transported, such bills will be regarded as the sole evidence of the final agreement between the parties, so that parol evidence will be incompetent to vary or contradict the terms thereof in the absence of fraud or mistake.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 1826–1828.]          .

**3.** CARRIERS—BILL OF LADING—LIMITED LIABILITY.

While a carrier's common-law liability cannot be limited by conditions expressed in a mere notice to the shipper or to the general public, nor by the terms of a receipt for the goods, or where the conditions are printed on the back of the bill of lading or stamped across its face, yet conditions printed or written on the face and in the body of the bill will be presumed to have been assented to and to form part of a valid, enforceable contract, where the consignor receives the bill and ships the goods without complaint, if such conditions are not inimical to law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 687–696.]

**4.** SAME—UNILATERAL CONTRACT—SHIPPER'S SIGNATURE.

In the absence of a state statute requiring it, the shipper's signature is not essential to a bill of lading limiting the carrier's liability.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 677, 679, 682–685, 691–696.]

**5.** SAME—PLEADING—DEMURRER.

Where declarations in actions against certain carriers for injury to goods were based on written bills of lading containing limited liability clauses, such bills on demurrer to the declarations would be regarded as embodying the entire contract of the parties.

**6.** SAME—DUTY OF CARRIER.

Independent of special contract, a carrier is liable as an insurer of the absolute safety of goods intrusted to it for transportation, and is liable for any loss or injury thereto.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 471–495.]

**7.** SAME—LIABILITY FOR NEGLIGENCE.

While a carrier may limit its common-law liability by contract, it cannot contract to relieve itself from liability for damages resulting either from its negligence or that of its servants.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 654–659.]

**8.** SAME—LIMITED LIABILITY STIPULATIONS—CONSIDERATION.

Where bills of lading for transportation of cotton abroad showed that the inland charges had been paid, and that a specific rate of 23 cents per 100 pounds ocean freight had been guaranteed by the carriers from Savannah to Bremen, and the bills provided that in consideration of the rate of freight named it was stipulated that the service to be performed should be subject to the conditions contained therein, there was a sufficient consideration to support the limited liability conditions in the bills.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 641–644.]

**9.** SAME—COMMON-LAW LIABILITY—REFUSAL TO SHIP.

Georgia Civ. Code 1895, § 2278, provides that a common carrier is bound to receive all goods offered that he is able and accustomed to carry, on compliance with such reasonable regulations as he may adopt for his own safety and the benefit of the public. *Held*, that a carrier is bound to receive ordinary merchandise for transportation with the full measure of

159 F.—61

liability and at reasonable rates on demand, and that in case of its refusal so to do the shipper has a remedy in damages.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 98, 99.]

10. SAME—LIMITED LIABILITY STIPULATIONS—FRAUD.

The established rules against fraud, misrepresentation, or duress are applicable to the full extent to limited liability stipulations in bills of lading, and the contract, in order to be sustainable, must be fairly made by the carrier, and freely entered into by the shipper.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 691, 695.]

11. SAME—REASONABLENESS—BURDEN OF PROOF—QUESTION FOR COURT.

The question of reasonableness of limited liability clauses in a carrier's bill of lading is for the court, the burden of proof being on the carrier.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 723.]

12. SAME—NEGLIGENCE—AVOIDANCE OF DAMAGE.

Carriers cannot exempt themselves from liability by stipulations against floods, fire, jettison, ice, delays, riots, strikes, leakage, breakage, or any human agency in which their negligence or that of their servants may be a factor, nor against other causes where their operation to cause loss or injury might be avoided by the exercise of extraordinary care and diligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 651–662.]

13. SAME—WANT OF NEGLIGENCE—PLEADING.

Where foreign bills of lading under which cotton was transported provided that the carrier should not be liable for injuries caused by "wet or country damage," and declarations charged that the cotton was damaged by "water and mud" prior to the termination of the inland transportation, the shipper was bound to allege, in order to state a cause of action, that such damage resulted from some concurrent negligence of the carrier or its servants, or that the damage could have been avoided by the exercise of care, etc., and that the carrier was not therefore relieved by the exception in the bill of lading.

14. SAME—SPECIFIC ACTS OF NEGLIGENCE—PLEADING.

Where shippers of cotton sued on special transportation contracts for damage thereto by mud and water, and the contracts exempted the carrier from liability for "wet and country damage," a general allegation of injuries without some specific acts of negligence on the part of the carrier was insufficient.

15. SAME—"WET AND COUNTRY DAMAGE"—"WATER AND MUD."

Where special cotton transportation contracts exempted all carriers from liability for "wet and country damage," declarations alleging that the cotton was injured by "water and mud" prior to the termination of the inland transportation stated a cause of damage within such exemption, the terms "water and mud" and "wet and country damage" being synonymous.

16. SAME—NOTICE OF INJURY.

Where shippers had ample time and opportunity to notify the carriers of damage to cotton which occurred before ocean transportation began, a provision in the bills of lading requiring notice of damage within 30 days after delivery of the cotton at destination was not unreasonable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 669–672.]

17. SAME—ACTION FOR DAMAGE—INTEREST OF PLAINTIFF.

Where shippers of cotton brought actions against the carrier for damage thereto, they were required to allege their title or interest in the cotton giving them a right of action, the carriers in case such interest is alleged being estopped to deny the same as provided by Ga. Civ. Code 1895, § 2286.

18. PARTIES—PLAINTIFFS—REAL PARTY IN INTEREST.

Under Ga. Civ. Code 1895, § 4939, requiring all actions on contracts to be brought in the name of the party in whom the legal interest is vested, the interest of plaintiff in order to entitle him to sue on contract for injury to goods, may be either that of general or special owner.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Parties, §§ 6–8.]

19. CARRIERS—INJURIES TO GOODS—DECLARATION.

Declarations in actions against carriers for injury to cotton alleged that the injury occurred while the cotton was in the possession of the carrier in Chatham county and before its contract of carriage had been completed, and declared that the loss was made up of "——— lbs. damaged cotton picked off, at ——— cents, loss of interest while cotton was being picked, loss, account of appearance of package and quality after picking, cost of picking, total $———, less value of pickings, $———." *Held*, that the declarations were defective for failure to fully state the injuries and losses complained of, the place where they occurred, and the facts necessary to indicate the method of computing the damages alleged.

20. SAME—EXTENT OF LOSS—STIPULATIONS.

A clause in a bill of lading that the value of goods lost or injured shall be computed at the place and time of shipment is reasonable and valid.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 663–667, 708–710.]

21. SAME—PLEADING.

Where bills of lading under which cotton was shipped provided that the value should be computed at the time and place of shipment and plaintiffs claimed damages by contact of the cotton with mud and water necessitating a quantity of the cotton to be picked off, and alleged values at certain fractional amounts per pound, but the declarations did not state the time of valuation nor the place where the market value was estimated, they were defective.

Actions for Damages upon Contracts.

William H. Barrett and Osborne & Lawrence, for plaintiffs.

J. Randolph Anderson, for Seaboard Air Line Railway Company.

W. L. Clay and Garrard & Meldrim, for Atlantic Coast Line Railroad Company.

SPEER, District Judge. Inman & Company, a firm of Augusta, have brought separate actions for damages for alleged breaches of contracts against the Seaboard Air Line Railway Company and the Atlantic Coast Line Railroad Company. As the terms of the contracts, and the issues raised by general and special demurrers by each of the defendants, are essentially the same, the causes are here considered as one. The amounts of the damages are gathered from alleged injuries to cotton, shipped from Augusta to "ship's side at Savannah, Ga., and thence to Bremen, Germany." Against the Coast Line, $33,-251.49 is claimed, and against the Seaboard $4,629.23. The declarations are made up of numerous counts or causes of action, each based upon special contracts with the defendants in the winter of 1902 and the subsequent spring, in connection with the Charleston & Western Carolina Railway Company, the initial carrier. The plaintiffs allege that the cotton was delivered to that company at Augusta, in lots of several bales, and "in good order and free from damage," and was so received by the defendant carriers at connecting points in Yemassee

and Fairfax, S. C., and transported thence to Savannah. The damages are alleged as follows:

"That said bales of cotton, while in the possession of said common carrier ——— in Chatham county and before its contract of carriage had been completed, were damaged by exposure of said cotton to water and mud, to the loss of your petitioners in the sum of ——— dollars."

The items making the loss are then stated:

"Damaged cotton picked off at ——— cents; loss of interest while cotton was being picked ———; loss account of appearance of package and quality after picking; and the cost of picking off damage."

From this is then subtracted "value of pickings," and the added results in all the counts constitute the totals. The contracts, which are substantially identical for the several consignments of bales, are in the form of bills of lading. General and special demurrers to the declarations are filed, the former on the usual ground that no cause of action is stated, and that the carriers named are not the proper parties defendant. The special demurrers present objections in such detail, and so affecting the vital component parts of the counts in the two petitions, that to sustain a material number will in effect sustain the general demurrers also. The petitions charge:

"That said contract of shipment is set forth in a certain bill of lading, No. ——— (the number in each case being inserted), which, with the proper changes in the contract number, quantity, marks, and weights of bales, is substantially the same as the original bill of lading, of which the Exhibit A hereto annexed is a copy."

On the hearing of the causes, the plaintiffs offered to amend as follows:

"The said contract of shipment is contained in that language of said bill of lading designating the goods shipped, the rate, the receipt of the goods in their then condition, and the route. The alleged 'conditions' set forth in said bill of lading constitute no part of said contract because they were not agreed to by your petitioners, but were inserted merely as an effort to limit the legal liability of the carrier. Such conditions are void, even if they had been agreed to, for the reason that there was no legal consideration to support them. Such conditions, and especially the following, are void because unreasonable. * * *"

Then follow the conditions which are sought to be avoided. To the allowance of this amendment, the defendants again object, on several grounds: (1) That they introduce a new, additional, and independent cause of action. (2) That their effect, if allowed, will be to convert a suit upon contract into a suit in tort. (3) That the plaintiffs, having declared upon a special contract, now seek by the proposed amendment to claim they are not bound by the terms of that special contract; and for these reasons they ask that the amendments be disallowed and stricken. The plaintiffs, it will be seen, while conceding that there was a special contract with the defendants, contend that it was contained in only a part of the bill of lading, and that the conditions were neither part of the contract nor agreed to by them. Can the shippers, then, after not only declaring upon a special contract, and alleging that it was in writing, and at the same time attaching a copy and expressly making it a part of their petitions, be now

heard to deny the very basis of their causes of action, and insist that they did not agree to what they distinctly allege was their contract? A position so inconsistent seems forbidden both by reason and the rules of pleading. The plaintiffs are concluded by their original allegations. To permit the amendments would in effect not only introduce a new and independent cause of action, inconsistent with the first complaints, but would change the petitions from actions upon special contracts to actions in tort. The precise question recently arose before the Supreme Court of Georgia, in the case of Southern Ry. Co. v. Parramore, 119 Ga. 690, 46 S. E. 822. The plaintiff sought to introduce an amendment to the effect that, as the bill of lading had not been signed by him or any one authorized, none of its statements could be invoked in favor of the defendant. The latter objected that the effect of the amendment would convert a suit upon contract into one in tort, and it was held:

"A plaintiff cannot declare upon a special contract with a carrier, and then by amendment claim that he is not bound by the terms of such special contract, and add a new and distinct cause of action."

And the court further held that the effect of the amendment "would be to repudiate the contract upon which in the original petition (the plaintiff) based his cause of action." Besides, it is true that to allow the amendments would be to annul that salutary parol evidence rule, which forbids the admissibility of extraneous testimony to vary or contradict the terms of a written instrument. The doctrine is held applicable to cases of this character by the Supreme Court of Georgia, in Western & Atlantic R. Co. v. Trust Co., 107 Ga. 512, 517, 33 S. E. 823, where it was said:

"The general rule is that a bill of lading, as a contract expressing the terms and conditions upon which the property is to be transported, is to be regarded as the sole evidence of the final agreement, in which are merged all prior and contemporaneous agreements of the parties, and, in the absence of fraud or mistake, its terms or legal effect cannot be added to, explained, nor contradicted by parol."

Again, in Wetzell v. Dinsmore, 4 Daly (N. Y.) 195, we find the following:

"If the plaintiff relies upon the bill of lading as evidence of the contract to carry, he cannot adopt one part of it and reject the rest. If it is to be used at all as an instrument of evidence on his part, it must be taken altogether, and the contract collected from all that is contained in it."

What a plaintiff cannot introduce as evidence he cannot set up in his pleadings as the basis of his action. Near the outset of the bill of lading, and immediately following the written language, which the plaintiffs admit was part of the contract, appears the following:

"In consideration of the rate of freight herein named, it is hereby stipulated that the service to be performed hereunder shall be subject to the conditions, whether printed or written herein contained, and said conditions are hereby agreed to by the shipper and by him accepted for himself and his assigns as just and reasonable."

Immediately below this are the "conditions" which the plaintiffs would avoid. That they are part of the contractual language is evident from the fact that they are followed by the subscribing clause of

the instrument purporting to be executed by R. A. Scott, Agent, "on behalf of carriers severally, but not jointly."

At this stage of the case, it must be presumed that the bill of lading expressed the contract between the parties. It is true that the common-law liability of a carrier cannot be limited by conditions expressed in a mere notice to the particular shipper, or to the general public, nor can this be effected in a mere receipt for the goods, or, generally, where the conditions are printed on the back of the bill of lading or stamped across its face. The Majestic, 166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039; Michigan Central R. Co. v. Mineral Springs Co., 16 Wall. 318, 21 L. Ed. 297; Doyle v. Baltimore & Ohio R. Co. (C. C.) 126 Fed. 841. That principle of law is embodied in section 2276 of the Civil Code of Georgia of 1895, which provides:

"A common carrier cannot limit his legal liability by any notice given, either by publication or by entry on receipts given, or tickets sold. He may make an express contract, and will then be governed thereby."

Construing this statute, it was held in early decisions by the state Supreme Court that the onus of proving an express contract is on the carrier, and that no presumption of law arises merely from the shipper's receipt of a bill of lading. Southern Express Co. v. Barnes, 36 Ga. 532; Southern Express Co. v. Newby, 36 Ga. 635, 91 Am. Dec. 783; Southern Express Co. v. Purcell, 37 Ga. 103, 92 Am. Dec. 53. But later decisions, and the great weight of authority, are to the contrary. Central R. Co. v. Hasselkus, 91 Ga. 385, 17 S. E. 838, 44 Am. St. Rep. 37; Western & Atlantic R. Co. v. Ohio, etc., Trust Co., 107 Ga. 512, 33 S. E. 821; McElveen v. Southern R. Co., 109 Ga. 249, 34 S. E. 281, 77 Am. St. Rep. 371. It is well settled that if conditions are printed or written on the face and in the body of the bill of lading, where the consignor receives the bill, and ships his goods without complaint, he is presumed to have consented to those provisions, and they become, if not inimical to law, a valid and enforceable contract. Unless the statute of the state so requires, the shipper's signature is unessential, and a unilateral bill of lading or receipt may express the contract. Moore on Carriers, 299; Hutchinson on Carriers, §§ 126, 238-242; Wheeler on Carriers, 273; York Co. v. Central Railroad, 3 Wall. 107, 18 L. Ed. 170; Wertheimer v. Pa. R. Co. (C. C.) 1 Fed. 232; Germania Fire Ins. Co. v. Memphis R. Co., 72 N. Y. 90, 28 Am. Rep. 113; Belger v. Dinsmore, 51 N. Y. 166, 10 Am. Rep. 575; Merchants' Dispatch Co. v. Leysor, 89 Ill. 43; Illinois Cent. R. Co. v. Frankenburg, 54 Ill. 88, 5 Am. Rep. 92; Smith v. American Express Co., 108 Mich. 572, 66 N. W. 479; Piedmont Mfg. Co. v. Columbia, etc., R. Co., 19 S. C. 353; Grace v. Adams, 100 Mass. 505, 97 Am. Dec. 117, 1 Am. Rep. 131; Cox, Brainard & Co. v. Peterson, 30 Ala. 608, 68 Am. Dec. 145; 4 Am. & Eng. Enc. Law, 521. The principle has moreover been authoritatively determined by the Supreme Court in Cau v. Texas Pacific R. Co., 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1053, where it was held:

" * * * The carrier may modify his responsibility by special contract with a shipper. A bill of lading limiting liability constitutes such a contract, and knowledge of the contents by the shipper will be presumed."

This case arose by certiorari from the Fifth Circuit Court of Appeals. There, per curiam, reported in 113 Fed. 91, 51 C. C. A. 76, we find the following language:

"Shippers have been held bound by the fire clause in a bill of lading, even when they claim that they did not know that the clause was in the bill of lading. Failure to read the bill of lading has been held under such circumstances not to avail the shipper."

This opinion, as stated, was affirmed by the Supreme Court. See, also, Charnock v. Texas Pacific R. Co., 113 Fed. 92, 51 C. C. A. 78. Pretermitting, however, the presumption of law arising from the language of the bill of lading, and its acceptance by the plaintiffs, they must be held concluded by their pleadings, where they have expressly alleged that the bill of lading contains their contract, and have made it part of their petition.

For the purposes of this demurrer, the bill of lading then must be regarded as embodying the contract of the parties. It remains to be determined whether there be any rule of law or of public policy which renders that contract void or unenforceable. Independently of special contract, it is the law both in this country and in England that a common carrier owes a duty to the public to carry for a consideration the goods intrusted to it, free from negligence. Under the common law, the carrier was liable not only for the acts of negligence of its servants, but as an insurer of the absolute safety of the goods from loss or injury. This former rule of liability is expressed by Justice Field, in York Co. v. Central Railroad, 3 Wall. 107, 18 L. Ed. 170, as follows:

The common carrier "is chargeable for all losses except such as may be occasioned by the act of God or the public enemy. He insures against all accidents which result from human agency, although occurring without any fault or neglect upon his part, and he cannot by any mere act of his own avoid the responsibility which the law thus imposes."

Hannibal R. Co. v. Swift, 12 Wall. 262, 20 L. Ed. 423; Johnson v. East Tenn. R. Co., 90 Ga. 810, 17 S. E. 121. The rigor of that doctrine upon the carrier has, however, been largely modified by statute in probably every state of the Union, so that it is now well settled that a common carrier may by just and reasonable contracts limit the extent of its common-law liability. But the rule is equally well settled, and obtains as universally, that a carrier cannot contract to relieve itself from damages resulting from its own negligence or that of its servants. Moore on Carriers, 287. From the quasi public character of their business, and the duties they owe to the public, contracts between carriers and shippers have always been subject to the closest scrutiny of the courts, with a jealous endeavor to guard the rights of the weak, ignorant, or inexperienced. For this reason, they are not to be construed by the ordinary legal rules which govern private contracts, but with due regard for the relative positions of shipper and carrier, and the common-law and statutory duties of the latter. We find, therefore, in the earlier cases and texts the principle laid down that a condition limiting common-law liability must not only be reasonable, and impose no unnecessary harshness on the shipper, but there must be a special consideration, such as a lower cost of transportation, additional to the

mere agreement by the carrier to receive and transport the freight to the connecting carrier or its destination. Where the consideration is a reduction of freight, the shipper must have had ample opportunity to choose between the two rates and their accompanying consequences. Thus we find the rule stated in Moore on Carriers, p. 302:

"A special contract between a shipper and a common carrier, or a stipulation in a bill of lading, qualifying or limiting the common-law liability of the carrier, must be supported by a valuable consideration apart from their mere acceptance of the property for carriage and agreement to transport it, such, for example, as an actual reduction from the usual freight rate, or additional facilities for transportation. Both rates of transportation offered the shipper must be reasonable, and he must be given the option to make his selection in order to render the consideration of a reduced rate valid and sufficient."

In the case of Georgia R. Co. v. Reid, 91 Ga. 377, 17 S. E. 934, it was held that a stipulation limiting liability was not valid unless made for reduced rates of shipment. See, also, Hutchinson on Carriers, §§ 404, 475; Elliott on Carriers, § 1504; Lake Erie & W. R. Co. v. Holland, 162 Ind. 406, 69 N. E. 138, 63 L. R. A. 948; Mears v. New York R. Co., 75 Conn. 171, 52 Atl. 610, 56 L. R. A. 884. But the construction by the Supreme Court of that theretofore essential element of validity seems to have considerably modified or annulled the former doctrine. Said Mr. Justice McKenna, expressing the unanimous decision of the Court in Can v. Texas Pacific R. Co., 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1053:

"It is urged that the contract must be upon a consideration other than the mere transportation of property, and an option and opportunity must be given to the shipper to select under which, the common law, or limited liability, he ships the goods. ·If this means that a carrier must take no advantage of the shipper, or practice no deceit upon him, we agree. If it means that the alternative must be actually presented to the shipper by the carrier, we cannot agree. * * * Primarily, the carrier's responsibility is that expressed in the common law, and the shipper may insist upon the responsibility. But he may consent to a limitation of it, and this is the 'option and opportunity' which is offered to him. What other can be necessary? There can be no limitation of liability without the assent of the shipper, * * * and there can be no stipulation for any exemption by a carrier, which is not just and reasonable in the eye of the law. * * * The consideration expressed in the bill of lading was sufficient to support its stipulations. This effect is not averted by showing that the defendant had only one rate. It was the rate also of all other roads, and presumably it was adopted and offered to the shippers in view of the limitation of the common-law liability of the roads."

The plaintiffs contend here that the conditions in the bill of lading are invalid because without any consideration to support them. But the bill of lading given to Inman & Co. shows that the inland charges from Augusta to Savannah were paid, and that a specific rate of 23 cents a 100 pounds ocean freight was guaranteed from Savannah to Bremen. The language of the contract itself leaves no doubt. It provides:

"In consideration of the rate of freight herein named, it is hereby stipulated that the service to be performed hereunder shall be subject to the conditions· * * * herein contained. * * *"

The plaintiffs make no assertion of duress or hardship in their acceptance of these terms. Had they insisted, they might have demanded

that the defendant carriers transport their cotton with the full measure of liability, and a reasonable rate therefor, or additional facilities or advantages of carriage. Had the defendants refused to accept the cotton under these conditions, Inman & Co. could have had their remedy in damages. This is clearly provided for in section 2278 of the Civil Code of 1895 of the state, which provides:

"A common carrier, holding himself out to the public as such, is bound to receive all goods and passengers offered, that he is able and accustomed to carry, upon compliance with such reasonable regulation as he may adopt for his own safety and the benefit of the public."

Nor could the defendants have limited their liability as insurers save by contract. Section 2276, Code Ga. 1895. Besides, it appears from the declarations that the Coast Line and the Seaboard received these bales of cotton, not as initial, but as connecting, carriers. Their duty to the plaintiffs was the more plain. The statutes of the state required them to receive from the Western & Carolina "all cars containing freight consigned to any point on the road to which the same is offered." Had they refused, the precise damages recoverable were readily ascertainable. The law of Georgia expressly gives a right of action to the consignee, shipper, or owner for any refusal to receive goods from connecting carriers, and affixes a penalty of "not less than ten per cent. nor more than twenty-five per cent. of the value of the goods so refused to be received." In view of these considerations, and the ruling of the Supreme Court, the contention that the conditions were unsupported by a consideration cannot be held maintainable.

It is, however, insisted that certain of the conditions in the bill of lading were unreasonable, and therefore must be regarded as void. As we have seen, stipulations for exemption must be "just and reasonable in the eye of the law," and "a carrier must take no advantage of a shipper, and practice no deceit upon him." Can v. Texas & Pacific R. Co., supra. The established rules against fraud, misrepresentation, or duress are applicable to the fullest extent. The contract must be fairly made by the carrier, and freely entered into by the shipper. Moore on Carriers, 302. The question of reasonableness is for the court, and the burden of proof is on the carrier. South., etc., Ala. R. Co. v. Henlein, 52 Ala. 606, 23 Am. Rep. 578.

The second condition in the bill of lading is as follows:

"No carrier or party in possession of all or any of the property herein described, shall be liable for any loss thereof or damage thereto, by causes beyond its control or by floods or by fire; jettison, ice, collision, stranding or other accidents of navigation; or by delay, quarantine, or by riots, strikes, stoppages of labor, or by leakage, breakage, chafing, loss in weight, decay, vermin, changes in weather, heat, frost, wet or country damage on cotton, or for shrinkage of grain or seed carried in bulk; or from any cause, if it be necessary or is usual to carry such property upon open cars or upon deck."

The reasonableness of many of the causes inserted in this paragraph may at least be doubted, particularly the "omnibus" clause which is aimed to protect the carrier from liability "from any cause, if it be necessary or is usual to carry such property upon open cars or upon deck." It is also obvious that the carriers cannot exempt themselves by stipulations against floods, fire, jettison, ice, delay, riots, strikes, leakage,

breakage, or any human agency in which their negligence or that of their servants may be a factor, nor against other causes, where their operation to cause loss or injury might be avoided by the exercise of due precaution, care, and diligence by the carriers. The carrier must in all cases have used extraordinary care and diligence to avoid the damages, or it cannot avoid liability. Now, the defendants insist that the exemption against "wet or country damage on cotton" avoids the damages claimed by the plaintiffs. But, regardless of that exemption, the defendants must be free from any contributory negligence. The petition nowhere alleges that the damages to the cotton occurred on account of any negligence of the Seaboard or the Coast Line. It becomes, then, vital to the determination of these issues, to determine upon whom the burden of alleging and proving negligence or want of negligence must fall. If the burden is upon Inman & Co. to allege specific acts of negligence, since they have not done this, not only must the general demurrer be sustained, but the condition in the bill of lading against "wet or country damage" (since it appears on the face of the pleadings), would defeat the plaintiffs' cause of action. On the other hand, if negligence may be presumed from the mere allegations of injuries, and the burden is upon the railroads to show want of negligence of any kind, until this is shown by the proof, the condition against "wet or country damage" cannot protect them, and the general demurrers must be overruled. In other words, is negligence presumable per se from the general allegations of damage? The presumption of law and the burden of proof, by the great weight of national and state authority, is in favor of the shipper. The goods are presumed to have been received by the carrier in good order, unless the proof shows to the contrary. Henry v. Central R. & Banking Co. 89 Ga. 815, 15 S. E. 757; Forrester v. Ga. R. & Banking Co., 92 Ga. 699, 19 S. E. 811; Price v. Powell, 3 N. Y. 325. From the time of delivery of these bales of cotton to the Charleston & Western Carolina Railroad Company, and the receipt of the carrier's agent as "in apparent good order," the presumption operates against the carrier that, if any loss or damage is shown to have occurred, it was occasioned by some negligence. It is then incumbent on the carrier, upon such damage appearing, to rebut the presumption of negligence. This may be done by showing freedom from negligence, or that the injury occurred through some cause for which, under the provisions of the contract or general principles of law, the carrier is not liable. A prima facie presumption arises, from the carrier's possession, that the goods were injured by some default. To meet this, it may show that the damage was occasioned by some cause for which the bill of lading exempted it from liability. The shipper must then show some concurrent negligence by the carrier, and that the damage could have been avoided by the exercise of reasonable care and skill. Ceballos v. The Warren Adams, 74 Fed. 413, 20 C. C. A. 486; Wertheimer v. Pennsylvania R. Co. (C. C.) 1 Fed. 234; Hull v. Chicago, etc., R. Co., 41 Minn. 510, 43 N. W. 391, 5 L. R. A. 587, 16 Am. St. Rep. 722. The rule is stated in Clark v. Barnwell, 12 How. 272, as follows:

"Although the injury may have been occasioned by one of the exempted causes in the bill of lading, yet still the owners of the vessel are responsible,

if the injury might have been avoided by the exercise of reasonable skill and attention on the part of the persons employed in the conveyance of the goods. But the onus probandi then becomes shifted on the shipper to show the negligence."

Since Inman & Co. declare upon special contracts, an essential part of which are conditions exempting the defendants from liability, if, as appears, "water and mud" and "wet and country damage" were synonymous, besides a general allegation of injuries, they must allege some specific acts of negligence in connection with the damages through "water and mud." This they have failed to do.

Another very material condition in the bill of lading is that which requires notice to the carriers of any injury suffered. It is as follows:

"Claims for loss or damage must be made in writing to the agent at point of delivery promptly after arrival of the property, and if delayed more than 30 days after the delivery of the property, or after due time for the delivery thereof, no carrier hereunder shall be liable in any event."

The plaintiffs contend that this condition is unreasonable, and imposes an unnecessary hardship upon them, and that, therefore, it is ineffective to relieve the defendant railroad companies of liability. The pleadings of the plaintiffs charge no notice, and it appears that none was given. If, then, the requirement that notice shall be given is reasonable, and controverts no principle of law, as it is an essential part of the contract (as we have seen), it must defeat the plaintiffs' right to recover. In determining the reasonableness of conditions, no universal rule has been announced, but the court must determine from the face of the pleadings, and if this is insufficient, after full proof, whether the condition is reasonable under the particular facts of each case. Where proof is submitted, the burden is upon the defendants to show that the rule imposed on the shipper is reasonable. Hutchinson on Carriers, §§ 443, 447; Elliott on Carriers, 1512, 1514. Where no hardship to the shipper appears, requirements of notice have been uniformly sustained by the courts. Such a stipulation is not an attempt to limit the common-law liability of the carrier. 4 Am. & Eng. Enc. of Law, 516. Notice may be waived by the carrier, but it is incumbent upon the shipper to show such waiver. Elliott on Carriers, 1514. The reason and justice of conditions of this character is stated in Hutchinson on Carriers (2d Ed.) § 259, as follows:

"The object of such a stipulation is to enable the carrier, while the occurrence is recent to ascertain what the facts are, and having made his claim, the owner may delay his suit to any time limited by the law. There is no hardship * * * in requiring the bailor to give notice of the loss, if any, or make a claim for compensation within a reasonable time after he has delivered the parcel to the carrier. There is a great hardship in requiring the carrier to account for a parcel after a long time, when he has had no notice of any failure of duty on his part, when the lapse of time has made it difficult, if not impossible, to learn the actual facts."

See, also, Moore on Carriers, 333.

Under the particular facts in the cases involved, various courts have upheld conditions requiring notice by the shipper or consignee to the carrier, for times varying from 30 to as low as 3 days after the arrival of the goods. The condition in the case at bar has been often upheld

in other jurisdictions. In the case of B. & O. Southwestern Ry. Co. v. Ragsdale, 14 Ind. App. 406, 42 N. E. 1106, it was held:

"The carrier may lawfully stipulate that any claim for damages growing out of the carrier's negligence shall be made within a reasonable time, and ten days has been held to be a reasonable time."

The Court of Appeals of the state of Illinois has repeatedly held that a stipulation requiring notice within five days after the damage is reasonable and valid. Chicago & A. R. Co. v. Simms, 18 Ill. App. 68; Wabash, St. Louis, etc., R. Co. v. Black, 11 Ill. App. 465. In Sprague v. Railway Company, 34 Kan. 347, 8 Pac. 465, a similar question arose under a stipulation which provided "that as a condition precedent to the right (of the shipper) to recover damages for any loss or injury to horses while in transit, the shipper would give notice of his claim therefor to some officer of said railway company, or its nearest station agent, before the horses were removed from the place of destination, or from the place of delivery, to the shipper, and before such horses were mingled with other stock." It was held that this was reasonable, and binding upon the parties. A case involving the validity of a stipulation almost identical with this Kansas case recently came before the Supreme Court of Georgia, in Southern Ry. Co. v. Adams, 115 Ga. 705, 709, 42 S. E. 35, 36, and the court observed:

"* * * Such a stipulation prejudices no right of the owner or consignor, and, at the same time, protects the transportation company; and, following the authorities above cited, we must not only rule that the carrier could lawfully make a contract containing a stipulation of this character, but that such a stipulation is a reasonable one."

In Express Company v. Caldwell, 21 Wall. 264, 22 L. Ed. 556, the Supreme Court of the United States upheld a stipulation by an express company that a claim for loss should be made within 90 days after the delivery of the goods for consignment. There, Mr. Justice Strong observed for the court:

"A common carrier is always responsible for his negligence, no matter what his stipulations may be. But an agreement that in case of failure by the carrier to deliver the goods, a claim shall be made by the bailor or by the consignee within the specified period, if that period be a reasonable one, is altogether of a different character. It contravenes no public policy, it excuses no negligence. It is perfectly consistent with holding the carrier to the fullest measure of good faith, of diligence, and of capacity, which the strictest rules of the common law ever require."

The rule which was placed in the bill of lading now before the court was entirely reasonable. The plaintiffs had ample time and opportunity to notify the Seaboard and the Coast Line of their alleged injuries. The transit of the cotton from Savannah to Bremen would have required no more than 2 weeks, and the bills of lading only required notice within 30 days after the delivery of the property at Bremen. The alleged damages on account of mud and rain occurred in Savannah before the bales were loaded on the vessels. Inman & Co. in the exercise of proper diligence could have readily ascertained the damages, and notified the carriers before 30 days had elapsed from the time the

cotton reached Bremen. We conclude, therefore, that this stipulation was reasonable, and a condition precedent to recovery.

Voluminous objections were also raised by special demurrers, to sustain any material number of which must, as stated, in effect sustain the general demurrers. A material ground is that the plaintiffs have alleged no title or interest in the cotton giving them a right of action. Had Inman & Co. alleged such title, the defendants would be estopped to deny it. Code Ga. 1895, § 2286. Actions upon contracts "must be brought in the name of the party in whom the legal interest * * * is vested." Code Ga. 1895, § 4939. That interest may be one of either a general or special owner. In the case of Minturn v. Alexandre (D. C.) 5 Fed. 117, libel was brought for the recovery of damages to a cargo, and it was held by Judge Choate that the libel "should contain averments, showing unequivocally, and with reasonable certainty, that the libelants had such a special or general right of property in the cargo, that by its loss or injury they had suffered damage." See, also, New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 12 L. Ed. 465. To establish a good cause of action, it was essential for Inman & Co. to allege some ownership or interest. It is nowhere alleged that they had any connection with these bales of cotton other than contracting for their transportation. In justice to their right of protection against claims for the same injuries by other parties at interest, the defendants should know the connection of the plaintiffs. The bills of lading and the cotton may have been assigned or sold by the shippers after or even prior to the time the bales reached Bremen, or Savannah, and prior to these actions. While full detail was unnecessary, Inman & Co. should have put the railroad companies on notice of what interest they claimed, for it is vital in determining not only the right, but the amount of damages recoverable.

The petitions have been attacked upon the additional ground that they fail to properly allege a breach of contract, and that the charge that the cotton was damaged "while in the possession of said common carrier in Chatham county * * * and before its contract of carriage had been completed," is insufficient, as a mere conclusion of the pleader. The time, place, and manner of the injuries, as well as the specific acts of negligence, it is said must be stated. While the objection to the allegation of breach may be regarded as hypercritical, and, as we have seen, the rule in this state does not require the plaintiff ordinarily to allege specific acts of negligence, it is none the less true that the injuries or losses complained of must be definitely and fully stated. This is not done in these petitions. There is no statement where the injury occurred other than in "Chatham County," whether during its transportation to the defendants' depots by reason of improper protection, or by exposure after arrival there, or while being loaded aboard ships. A defendant is entitled, when he presents a special demurrer, to be fully informed of the facts upon which the plaintiff would hold him liable. Fontaine v. Baxley, 90 Ga. 428, 17 S. E. 1015; Railroad Co. v. Mitchell, 95 Ga. 85, 22 S. E. 124; Kemp v. Central of Ga. R. Co., 122 Ga. 562, 50 S. E. 465. Besides these defects, the petitions are open to further objections that the items of damage are

not stated. The total amounts claimed under each count appear, with items described as follows:

That said loss was made up as follows:
—— lbs. damaged cotton picked off, at —— cents...............
Loss of interest while cotton was being picked....................
Loss account of appearance of package and quality after picking....
Cost of picking off damage.......................................:
    Total ..........................................................$——
Less value of pickings...........................................$——

It is not stated when, where, how, by whom, or by whose authority the damaged cotton was picked off, nor, if the cotton was in fact injured, the necessity for its picking. Nor is the item stated as "loss of interest while cotton was being picked" sufficient. To recover such damages, the necessity of picking must be shown, the time required, and that it was as expeditious as possible. Besides the method of computation, the principal, time, and rate of interest are undisclosed. The following item presents equally grave difficulties. It does not show how the appearance of the package was altered, nor the method of arriving at the damages. These must be exact and definite, remote and speculative damages are not recoverable. Tompkins Co. v. Monticello Cotton Oil Co. (C. C.) 153 Fed. 817. If the plaintiffs had to sell the cotton at reduced prices, under special contracts or subsequent sales, such contracts must have been in existence, or their contemplation made known to the defendants prior to the execution of these bills of lading. If the plaintiffs do not seek to recover under this measure of damages, they must show, in order to be entitled to these items, that the cotton was sold for the highest price obtainable by due diligence to sell, and that the difference in price was not due to their laches, but was directly connected with the injuries to the cotton. The other averments do not show either the necessity of picking, or that the pickings of cotton were sold as advantageously as possible. There is, moreover, a clause in the bills of lading which provides that the value of the goods lost or injured shall be "computed at the value of the property at the place and time of shipment." Such a clause has been held reasonable, and has been uniformly sustained. Central of Ga. R. Co. v. Murphey, 113 Ga. 514, 38 S. E. 970, 53 L. R. A. 720; Louisville & N. R. Co. v. Oden, 80 Ala. 38; Chicago, R. I., etc., R. Co. v. Harmon, 17 Ill. App. 640; 5 Am. & Eng. Enc. of Law, 335.

The plaintiffs have not stated the quality or grade of the damaged cotton picked off. Certain values per pound, varying in different fractional amounts above 10 cents, are given, but the time of valuation, or the place where the market value was estimated, whether in Augusta, Savannah, or Bremen, does not appear. As the condition in the bill of lading required, the pleadings must show that the damaged cotton was estimated from market prices in Augusta, for each lot of bales.

These are material insufficiencies vital to the plaintiffs' right of recovery. There are in addition other serious defects, which in view of those hereinbefore stated, it is not essential to discuss. The demurrer of the defendants to the amendments offered by the plaintiffs will be sustained, and the amendments disallowed. The general and the special demurrers must, for the reasons stated, also be sustained.

Orders may be taken accordingly, dismissing the causes against both the Atlantic Coast Line Railroad Company and the Seaboard Air Line Railway Company, with costs.